## SWEENEY et al. v. SCHADLER.

Court of Appeals of Kentucky.
Dec. 5, 1952.

As Modified on Denial of Rehearing
March 27, 1953.

Motion to Reconsider Modified Opinion
Denied April 21, 1953.

Stephens L. Blakely, E. H. Walton, John H. Klette and W. Baxter Harrison, Covington, for appellants.

O. M. Rogers and R. C. Northcutt, Covington, for appellee.

CULLEN, Commissioner.

Elmer Schadler recovered judgment in the amount of $15,000 against Thomas Sweeney, for personal injuries sustained in an automobile accident. An attachment levied at the time the action was commenced, against real estate which Sweeney had conveyed to his wife on the day following the accident, was sustained by the judgment. The attachment was adjudged to be valid as against Mrs. Sweeney, and as against Arthur and Louise Beverly, who had purchased the real estate from Mrs. Sweeney after the attachment was levied. The lien of the attachment also was adjudged to have priority over a mortgage lien held by Edward Redmon, who had loaned money to the Beverlys. The judgment directed a sale of the attached real estate.

The Sweeneys, the Beverlys, and Redmon all appeal. They complain of the judgment both with respect to the adjudication of liability for damages and with respect to the sustaining of the attachment.

We will consider first the contention of the appellants that the court erred in overruling their motion for a directed verdict, and in directing a verdict for the plaintiff on the question of liability for damages.

The only witnesses to testify concerning the accident were the plaintiff Schadler, and a friend named Case who was a passenger in Schadler's automobile. We will state briefly their version of the accident.

Around 7:30 a. m. on March 27, 1945, Schadler and Case were driving in a south-

erly direction on an 18-foot concrete pavement, in Kenton County, Kentucky, on their way home after having worked all night at their jobs in a bakery in Cincinnati. The sun was shining brightly, and as the road made occasional turns in an easterly direction the automobile faced into the sun. The windshield of Schadler's car had dirt upon it, and moisture resulting from fog in low spots along the road, and when the sun struck the windshield it interfered with the vision of the driver and passenger. Case testified that he and Schadler "talked about that sun being wicked," and that Schadler was complaining about the sun bothering his vision.

When they reached a point on a long, sloping hill, Schadler brought the automobile to a stop, and got out with a rag to wipe off the windshield. Schadler maintains that at this particular point the automobile was not facing the sun, but Case's testimony was that "we pulled up around the bend in the road, and the sun hit us again in the windshield and then we stopped." There was room enough on the shoulder to have driven the car completely off the pavement, but according to Case the car was stopped with a substantial portion of it remaining on the pavement, the left wheels being halfway between the edge of the pavement and the black center line. Schadler wiped off the windshield, and then went around to the back to wipe off the rear window. He then observed Sweeney's car approaching several hundred feet to the rear, and he made a waving motion with the rag to indicate to Sweeney that there was no traffic approaching from the other direction and it would be safe for Sweeney to go on past. Assuming that Sweeney had seen him, Schadler then turned his back to Sweeney's car and resumed wiping off the rear window. The next thing he knew Sweeney's car struck him, forcing him against the bumper of his own car and crushing his leg. Sweeney's car had almost been brought to a stop when it struck Schadler, because the collision did not move Schadler's car Schadler fell on the pavement with his shoulders across the black center line.

Case testified that he asked Sweeney what happened, and Sweeney first said, "I don't know," and then said "I never seen him."

The plaintiff rested his case after presenting the above evidence, together with some evidence as to the nature and extent of his injuries. A motion of the defendants for a directed verdict was overruled. The defendants then rested their case and the court directed a verdict for the plaintiff, on the question of liability. The jury fixed the damages at $15,000.

The appellants contend that they were entitled to a directed verdict because the evidence shows that Schadler violated the statute in stopping his car on the highway. They further contend that in any event it was error to direct a verdict for the plaintiff. The appellee maintains that he did not violate the statute, and therefore was not guilty of any negligence.

As we view the case, the question of whether Schadler violated the statute relating to parking or stopping on the highway is not material. Had Schadler's car been completely off the highway and had he been standing on the pavement viewing the results of his handiwork with the rag, the situation would have been the same. The position of Schadler's car was not a cause of the accident. We think the real question in this case is whether Schadler was guilty of contributory negligence in failing to exercise ordinary care for his own, personal safety, as a person on foot upon the highway.

In 5 Am.Jur., Automobiles, sec. 442, p. 755, the following statement is made:

"A traveler engaged about an automobile in the highway is bound to use reasonable care for his own safety. The questions whether such care has been exercised, and whether one is guilty of contributory negligence, depend upon the facts in each case and are ordinarily questions of fact for the jury. * * *"

The statement is supported by a great variety of cases annotated in 25 A.L.R. 136, 34 A.L.R. 1515, and 61 A.L.R. 1164. Those

cases hold almost uniformly that it is not contributory negligence as a matter of law for a motorist to stand upon the paved portion of the highway while engaged in making adjustments or repairs to his automobile, but that the question of his contributory negligence ordinarily is for the jury.

In Tate v. Hall, 247 Ky. 843, 57 S.W.2d 986, where a motorist standing in the highway for the purpose of changing a tire was struck by a vehicle approaching from the rear, this Court held that the question of whether the motorist had exercised due care properly was submitted to the jury.

■ We think that reasonable minds might differ as to whether Schadler exercised ordinary care under the circumstances and conditions that existed in the case now before us; particularly whether it was reasonable for Schadler to assume that other motorists would have no difficulty in seeing him, when the very reason for his being where he was on the highway was his own inability to see clearly. In view of the fact that the statute establishing standards of care for pedestrians, KRS 189.570(6), requires a walking pedestrian to face traffic, a jury might well find that a reasonable standard of care for a stationary pedestrian requires him to be in a position to observe approaching vehicles.

We could not say as a matter of law that if Schadler was negligent in failing to take ordinary precautions to protect himself, his negligence was not a proximate cause of the accident.

It is our opinion that the question of contributory negligence of the plaintiff should have been submitted to the jury, and that it was error for the court to direct a verdict for the plaintiff.

Since the judgment must be reversed, and whether the plaintiff ultimately will recover will depend upon the results of a new trial, we expressly reserve consideration of the questions raised on this appeal concerning the validity of the attachment. However, two other questions relating to pleadings and process require consideration.

■ The plaintiff filed his original complaint in May 1945, asking damages in the amount of $5,000. A summons was issued for Mr. Sweeney only, and an attachment was issued and levied on certain real estate that Sweeney had conveyed to his wife. The summons was returned "not found". In June 1945, an alias summons was issued, and in September 1945 it was returned "not found". The action then lay dormant until December 10, 1947, when the plaintiff filed an amended complaint, raising his damage claim to $15,000, and secured a warning order for Sweeney on the ground of his absence from the state. Sweeney ultimately appeared in the action in May 1949, and filed various motions and pleadings.

One of the motions by the defendant Sweeney was to strike the amended complaint on the ground that the plaintiff could not increase the amount of damages asked for, without changing the allegations of his complaint as to the nature and extent of his injuries. The appellants complain of the overruling of this motion, and argue that the plaintiff must be limited to the amount of $5,000 asked for in his original complaint. There is no merit in that argument. The right to amend a petition before answer is recognized by section 132 of the Civil Code. Here, the amendment came not only before answer, but even before process had been served on the defendant. The defendant was brought before the court for the first time by the warning order issued on the amended complaint, and as far as he was concerned the situation was the same as if the sum of $15,000 had been prayed for in the original complaint. Furthermore, this Court has recognized the discretion of a trial court to permit an amendment to be filed even as late as the day of trial, increasing the amount of damages prayed for. Louisville & N. R. Co. v. Ray, 306 Ky. 857, 209 S.W.2d 714.

■ The remaining contention of the appellants that requires consideration is that the action was not commenced in good faith by the issuance of a summons in May 1945, and that the action really was not commenced until the issuance of the warning order in December 1947. The contention seems to have a twofold object; first, to establish that the action was not commenced within the statutory limitation period; and, second, to establish that the

attachment was invalid. As previously stated, we are reserving all questions as to the validity of the attachment. However, we will consider the question of limitations.

The basis for the contention is that when the action was filed, the plaintiff knew that the defendant Sweeney had left the state, and therefore the plaintiff knew that he could not get personal service of the summons. The obvious answer to the contention is that, if Sweeney absconded from the state after the accident (as it is clear he did), the statute of limitations did not run during the period of his absence. KRS 413.190(2).

The judgment is reversed, for proceedings consistent with this opinion.