Johnny PARKER, Appellant and
Cross-Appellee,

v.

Alton REDDEN, Appellee,

and

Christine Melton, Appellee and
Cross-Appellant.

Court of Appeals of Kentucky.

June 23, 1967.

As Modified on Denial of Rehearings
Dec. 15, 1967.

Earle T. Shoup, Paducah, for appellant and cross-appellee.

Roy N. Vance, Paducah, for appellee Alton Redden.

Roy Vance, Henry O. Whitlow, Waller, Threlkeld & Whitlow, Paducah, for appellee and cross-appellant Christine Melton.

CULLEN, Commissioner.

Johnny Parker's automobile, headed west on a two-lane highway at night, ran into the back of Christine Melton's automobile

which, with a flat tire, was stopped in the west-bound traffic lane. The force of the collision impelled the Melton car forward some 12 feet into the front of the car of Alton Redden, which was stopped, facing east, in the west-bound lane. Redden, who had been engaged in fixing the tire on the Melton car, was caught between his car and the Melton car and sustained serious injuries. Mrs. Melton suffered some personal injuries and her car was damaged slightly. Parker's car also incurred minor damage.

Redden sued Parker, who then filed a third-party complaint against Mrs. Melton, seeking contribution or indemnity with respect to any recovery that Redden might obtain against him. Mrs. Melton counterclaimed against Parker for her damages, and he in turn counterclaimed against her for his damages.

The trial court dismissed the third-party complaint for contribution or indemnity, on the ground that Mrs. Melton owed no duty to Redden. The rest of the issues were submitted to the jury. The verdict awarded $25,000 to Redden against Parker, and nothing to Mrs. Melton or Parker on their claims against each other, finding both of them negligent. Judgment was entered accordingly. Parker has appealed and Mrs. Melton has cross-appealed.

We shall first consider Parker's contention that he was entitled to a directed verdict on Redden's claim against him, on the grounds that (1) Redden was contributorily negligent as a matter of law and (2) Parker was as a matter of law not negligent. A brief statement of the facts is necessary.

Mrs. Melton, headed west on the two-lane country road, with several children in her car, around 7:15 p.m. on a day in late April, experienced a flat tire on the left front wheel of her car. She was on a rise from a dip in the road and she proceeded about the length of a city block to the top of the rise, where she brought the car to a stop either entirely or mainly in the west-bound traffic lane (her evidence was that her right wheels were off the pavement, leaving about four feet between the left side of her car and the center line). She testified that there was not room on the shoulder to enable her to pull her car completely off the road. There was a driveway directly across the road from the point where she stopped, but she said she did not see it; also that she had encountered difficulty in steering the car with the flat tire. There was a side road leading off to the right some 50 to 75 feet ahead of her but she said she did not see it or know of it.

Within a few moments Redden came along in his car, from the east, with his wife as a passenger. He stopped and upon being advised of the trouble offered to fix the tire. His wife proceeded on an errand with their car, and he commenced to work on the tire. Mrs. Melton had no jack in her car so he was able only to take off the hub cap and loosen the lugs. However, in a short time Mrs. Redden returned with their car, in which there was a jack. By this time it was dark, so Redden directed his wife to park their car in the west-bound lane, headed east, some 12 feet from the front of the Melton car, so the Redden car's headlights would furnish light to enable completion of the tire-changing operation. Mrs. Melton testified that the Redden car was so parked that its right headlight was six inches closer to the center line than was the left side of her car, thus making the headlight visible from the rear of her car. Redden remarked to Mrs. Melton that the situation was "dangerous" and he directed her to "flag traffic," but she remained in the area in *front* of her car and did not go down the road some distance *behind* her car where flagging might have been expected to do some good. Redden was aware that she was continuing to remain in front of her car.

Redden had completed the tire change and was lowering the jack when Parker, coming from the east (behind the Melton car), applied the brakes on his car and it commenced to slide straight ahead in the

west-bound lane, toward the Melton car. Mrs. Melton screamed and Redden jumped up, ran towards his car and attempted to climb up on the hood. However, he was a fraction of a second too slow and his leg was caught against the bumper of his car when the Melton car was impelled into it by the impact from the Parker car. Mrs. Melton testified that she was bumped to one side by her car.

Parker's argument that as a matter of law Redden was contributorily negligent, or assumed the risk, rests strongly on Mullins v. Bullens, Ky., 383 S.W.2d 130. There the decedent and several of his companions were standing behind their car stopped on the highway at night, with their backs to traffic, and with their senses perhaps a little dulled with beer, undertaking to put the detached hood of their car into the trunk. The decedent was struck by a car coming from the rear. We held that the decedent was *contributorily negligent* as a matter of law in standing on the highway "in an obviously perilous place, under the conditions at bar."

Parker also relies upon Carlisle v. Reeves, Ky., 294 S.W.2d 74. In that case the plaintiff stood on a heavily travelled city street, on a dark, rainy night, behind a truck standing in the street with no lights, with his back to traffic, writing down the license number of the truck. He was struck by a car coming from behind. We held that the plaintiff had as a matter of law *assumed the risk* (more about that later in this opinion).

Redden, maintaining that the issue of his contributory negligence or assumption of risk properly was submitted to the jury, cites Sweeney v. Schadler, Ky., 259 S.W.2d 680. There the plaintiff was standing behind his car, stopped on the highway in *broad daylight,* wiping off the rear window of his car. He saw the defendant's car approaching from the rear and waved to indicate that it was safe to pass on the left. He then turned his back and resumed wiping the window. He was struck by the oncom-

ing car whose driver had not seen him. We held that the question of whether the plaintiff had *exercised ordinary care* was for the jury, and we cited authority for the proposition that ordinarily the question of whether a traveler "engaged about an automobile in the highway" has exercised *reasonable care for his own safety* is a jury question.

Redden relies also upon Tate v. Hall, 247 Ky. 843, 57 S.W.2d 986, where the plaintiff, undertaking to change the left rear tire on a truck, at night, was struck by a car coming from the rear. The truck had no lights but the plaintiff and his companion had a flashlight directed at the rear of the truck which this court said "was sufficient to create a signal to one approaching from the rear." Also, the evidence was that the truck was almost entirely off the road and the plaintiff was standing only two or three feet from the edge of the pavement. This court held that the question of *contributory negligence* was for the jury.

Obviously the facts in each of the foregoing cases differ in one or more respects from those in the instant case, and perhaps the differences could be seized upon as constituting material distinctions. Before undertaking to evaluate the distinctions, however, we deem it necessary for us to face up to these problems: (1) Is there a difference between assumption of risk and contributory negligence in the kind of situation here presented? (2) If so, are there two kinds of assumption of risk? (3) Which of the various doctrines properly should be applied?

We are disposed to accept Prosser's analysis of these problems, with which the Restatement is substantially in accord. Our references are from Prosser, Law of Torts, Hornbook Series, Third ed., sec. 67, pp. 450 to 469; and Restatement of the Law, Second, Torts, sec. 466 and secs. 496 A to 496 G.

As applies to the type of situation here involved, Prosser describes the pure assump-

tion of risk doctrine accepted and applied by a number of jurisdictions, which bars recovery by the plaintiff who, aware of a risk *already created by the negligence of the defendant,* proceeds voluntarily to encounter it. Cf. Restatement, Second, Torts, secs. 496 A, 496 D. The bar is operative without regard to whether the plaintiff's conduct was *reasonable.* The theory appears to be that the plaintiff's acceptance of the risk has wiped out the defendant's *duty,* and as to the plaintiff the defendant's negligent conduct is not a legal wrong.

A second, qualified, doctrine, closer in theory to contributory negligence but still predominately an assumption of risk doctrine in the barring effect it has, requires that the plaintiff's *exposure* of himself to the risk be *unreasonable,* or stated another way, that the *risk be unreasonable.* Cf. Restatement, Second, Torts, sec. 466. This involves the reasonable man test of contributory negligence but the doctrine differs from contributory negligence in that it may bar the plaintiff where contributory negligence would not, such as in a case where the defendant is grossly negligent. It may even operate as a bar where the defendant had a last clear chance; see Gover v. Central Vermont R. Co., 96 Vt. 208, 118 A. 874.

Plain contributory negligence, therefore, may have less of a barring effect than does qualified assumption of risk. Also, it does not place emphasis upon, or give any special weight to, the subjective voluntariness of the plaintiff's conduct.

As seems to be true of the courts of most other jurisdictions, our court has wobbled around in this area, sometimes purporting to recognize a distinction between assumption of risk and contributory negligence and other times saying there is no distinction; sometimes seeming to accept the pure assumption of risk doctrine and other times invoking the requirement of unreasonableness that characterizes the qualified doctrine. It would extend this opinion beyond all reasonable proportions if we were to undertake an analysis or even a simple classification of all of our cases. We think it will be enough merely to discuss a few representative cases, including the four hereinbefore mentioned to which the briefs give special emphasis.

In Morrison & Conklin Const. Co. v. Cooper, Ky., 256 S.W.2d 505, we appear to have applied the pure or strict assumption of risk doctrine, saying that it was immaterial that other reasonable persons might have done what the plaintiff did. In Carlisle v. Reeves, Ky., 294 S.W.2d 74 (one of the cases relied upon by the appellant), the language again indicates an adherence to the pure or strict assumption of risk doctrine. And in Lanzner v. Wentworth, Ky., 315 S.W.2d 622, where a garage employe engaged in changing a tire in daylight, on the left rear wheel of an automobile stopped in the middle of a traffic lane, was struck by an automobile approaching from the rear, we held, citing Carlisle v. Reeves, that as to the owner of the car with the flat tire, who was the only appellant, the employe had assumed the risk because the danger was apparent.

In other cases we have used the term "assumption of risk" but have invoked the requirement of unreasonableness. For example, in Whittaker v. Cole, Ky., 390 S. W.2d 893, we held that the plaintiff was not barred simply by his own admission that he considered the situation dangerous; we applied the rule that intentional exposure to danger, in order to operate as a bar, must be *unreasonable.* We appear to have been incorrect in stating that under either "test" of assumption of risk the standard is the ordinarily prudent man, and in saying that one of the "tests" is whether an ordinarily prudent man would recognize and appreciate the existence of a substantial risk. This appears to be wrong. The correct view appears to be that under the pure or strict doctrine reasonableness is not involved, and the standard is a purely subjective one. And while under the qualified doctrine the test of unreasonableness

may be applied either to the quality of the risk or to the conduct of the plaintiff in exposing himself to the danger, in application to the quality of the risk the issue is whether or not the risk is unreasonable—not whether it is substantial.

It appears that in most of our cases we have chosen to treat voluntary subjection of the plaintiff to a risk as a matter of simple contributory negligence, both in principle and in terminology. So, in three of our four cases hereinbefore mentioned to which the briefs give special emphasis (Mullins v. Bullens, Sweeney v. Schadler, and Tate v. Hall) we treated the issue as being one of contributory negligence.

We are not aware of any Kentucky case in which any distinction in *application* has been made between *qualified* assumption of risk (involving unreasonableness) and contributory negligence, as concerns the barring effect of the plaintiff's conduct. That is, we do not seem to have recognized the possibility that qualified assumption of risk might operate as a bar to recovery even as against gross negligence, whereas contributory negligence would not so operate. So to this extent we have been consistent in saying that assumption of risk and contributory negligence are the same thing. Where we have been inconsistent is in sometimes applying the pure assumption of risk doctrine which does not involve the concept of unreasonableness that is inherent in the contributory negligence doctrine.

One thing to which perhaps we have not given full significance is that the assumption of risk doctrines really are intended to apply only where the negligence that creates the risk *has already occurred* at the time the plaintiff chooses to subject himself to the risk. The assumption is not of risks from subsequent acts of negligence, but only from acts of negligence already committed. This fact may justify the seeming harshness of the pure assumption of risk doctrine, and the complete barring effect of the qualified doctrine. In the three cases hereinbefore discussed in which

we seem to have applied the pure doctrine (Morrison & Conklin Const. Co. v. Cooper, Carlisle v. Reeves, and Lanzner v. Wentworth) it probably is significant, although not so stated in the opinions, that the risk assumed was of negligent acts already committed by the person against whom recovery was sought.

 We have reached the point in this discussion where we must say what we are going to do about assumption of risk. The answer is that we are going to abolish it. First, we think that the pure assumption of risk doctrine, under which the plaintiff is barred even though he acted reasonably, should no longer be recognized or applied, because reasonableness of conduct should be the basic consideration in all negligence cases. So we think that in the instant case Redden's admitted awareness of the risk does not ipso facto bar his recovery; the controlling question is whether he acted reasonably. Second, it is our opinion that the distinctions (hereinbefore mentioned) between *qualified* assumption of risk and contributory negligence are not significant enough to warrant retaining assumption of risk as a separate doctrine. The main distinction is that assumption of risk may operate as a bar to recovery in certain situations where in pure application contributory negligence would not effect a bar. We think this problem can be handled simply by making minor adjustments in our contributory negligence doctrine. For example, if the defendant is guilty of gross negligence the plaintiff who is aware of such negligence and exposes himself to the resulting risk may be held to be barred from recovery on the ground that his contributory negligence is of equal (gross) rank with the negligence of the defendant.

A fear might exist that the abolishing of the pure or strict assumption of risk doctrine might have the result of permitting a plaintiff to recover where no concept of fault would warrant his recovery, in a situation where the defendant's already-committed negligent acts of which the

plaintiff is aware have created a risk also of which the plaintiff is aware. Our answer is that if there was no substantial necessity or urgency for the plaintiff's subjecting himself to the risk, or if the risk was one that easily could have been eliminated before the plaintiff took action, the plaintiff who took the risk must be considered as a matter of law to have acted unreasonably and he will not recover. On the other hand, if there was an urgent necessity for the plaintiff to incur the risk, such as to save a life, and if the risk could not easily have been eliminated, there is no reason why the damage suffered by the plaintiff should be borne by him rather than by the defendant who negligently created the risk. We think any problem can be eliminated by weighing reasonableness in the light of the necessity or urgency for the action and the difficulty of removing the risk before acting, keeping in mind that a person's appreciation of danger may be affected in what appears to him to be an emergency situation. In this connection see Restatement, Torts, Second, sec. 466, Comments, pp. 512 to 514, sec. 472, pp. 521, 522; Prosser, Law of Torts, Hornbook Series, 3rd ed., sec. 67, pp. 450, 451.

We having decided to abolish assumption of risk in this jurisdiction, it naturally follows that the question of whether Redden should be barred from recovery in the instant case is one of contributory negligence—failure to observe the standard of care of the ordinarily prudent man (or a *statutory* standard of care). This was the issue submitted to the jury. Our question now is whether Redden should have been held contributorily negligent as a matter of law. In considering that question we shall at first disregard the fact that Redden's car was stopped on the highway in plain violation of the statute, KRS 189.450. Later we shall discuss the effect of that violation.

As stated in Sweeney v. Schadler, Ky., 259 S.W.2d 680, the question of whether a traveler "engaged about an automobile in the highway" has exercised reasonable care for his own safety ordinarily is a jury question. However, in some factual situations the answer to the question is so beyond difference of opinion as to make the determination a matter of law. Such were the situations in Mullins v. Bullens, Ky., 383 S.W.2d 130, and Carlisle v. Reeves, Ky., 294 S.W.2d 74, in each of which cases the plaintiff was held contributorily negligent as a matter of law. Parker maintains that the situation in the instant case is in the same category. He points to the facts that it was night; Mrs. Melton's car was stopped substantially occupying the west-bound traffic lane on the crest of a rise approaching which there were no-passing lines; Redden did not keep a lookout for his own safety and although he asked Mrs. Melton to keep a lookout and flag oncoming traffic he knew she was not in a position to do so effectively; and there was a driveway directly across the road from the Melton car into which he could have driven the car before working on the tire.

The facts so pointed to by Parker make the case a close one, but a majority of our court is not convinced that the facts show Redden's conduct to be so obviously unreasonable as to convict him of contributory negligence as a matter of law. The facts in Mullins v. Bullens were a little more aggravated in that there the plaintiff had his back to traffic, he was somewhat under the influence of beer. Similarily, in Carlisle v. Reeves, there were especially dangerous conditions in that the plaintiff was standing with his back to traffic, on a heavily travelled street, on a dark, rainy night, behind a truck with no lights.

While the distinctions just discussed may make a distinguishable difference between the instant case and the Mullins and Carlisle cases, we think there is another distinguishing factor which is simply that in the instant case Redden had a more *justifiable reason* for subjecting himself to the danger. He was a Good Samaritan aiding a lady in distress, whereas

in the Mullins and Carlisle cases there was no real urgency in the situations. As hereinbefore mentioned, in determining whether a person has acted reasonably consideration should be given to the degree of necessity or urgency for the action (and to the degree of effort or attention that would have been required to remove the danger. Also consideration should be given to the fact an appearance of emergency may affect a person's appreciation of danger.

■ It is our conclusion that the question of whether Redden failed to act as a reasonably prudent man in placing himself in a position of danger was a jury question.

■ This brings us to a consideration of the effect to be given to the fact that *Redden's* car was parked on the highway in violation of the statute. Clearly, this violation was not a *cause* of the *accident*. The accident consisted of the collision between Parker's car and the Melton car, resulting in the latter car's being impelled against Redden. At the most, the position of Redden's car might have contributed to his *injuries*. Cf. Bentzler v. Braun, Wis., 149 N.W.2d 626. But we do not believe it could be held as a matter of law that the position of the Redden car was such a substantial factor in causing the *injuries* as to require denial of recovery for the injuries.

■ Parker suggests that since the jury found Mrs. Melton negligent on the apparent ground that her car was stopped on the highway in violation of the statute, KRS 189.450, Redden necessarily must be held negligent also, since he "stepped into her shoes." We think the answer to this is that Redden did not violate the statute with respect to Mrs. Melton's car, so he is not chargeable with statutory negligence. And he can be found guilty of common law negligence only if he failed to act as an ordinarily prudent man. A person who is engaged in work or activity around an illegally parked car is not automatically negligent simply because the car is parked in violation of the statute. See Sweeney v. Schadler, Ky., 259 S.W.2d 680; Tate v. Hall, 247 Ky. 843, 57 S.W.2d 986; Lanzner v. Wentworth, Ky., 315 S.W.2d 622.

Our net conclusion on this phase of the case is, then, that the question of Redden's contributory negligence properly was submitted to the jury.

■ Parker's next contention is that as a matter of law he should have been held not negligent. We find no merit in this contention. There was evidence that the taillights and the left-turn signal on the back of Mrs. Melton's car were illuminated; that the headlights and right-turn signal on Redden's car were on and that the right headlight and turn signal were visible from behind the Melton car; and that there was no oncoming traffic to obscure Parker's vision. A motorist traveling behind Parker's car testified that he saw the lights at the point where the Melton car was stopped when he was some 1,000 feet away. Parker's lights should have revealed objects ahead of him for a distance of 350 feet. KRS 189.040. His normal stopping distance at a speed of 50 miles per hour, which he claims was his maximum speed, would have been 186 feet, including "thinking distance" or reaction time. This means that if it took him 150 feet, or two full seconds, after he first should have seen the Melton car, to realize that it was stopped and that the flashing turn signal and other lights at the scene meant that an abnormal condition existed, he still should have had time to stop. It is our opinion that the evidence presented a jury question as to Parker's negligence.

We come now to the various issues presented on the claims between Parker and Mrs. Melton.

Parker maintains that Mrs. Melton should have been held negligent as a matter of law on his claim against her for damages

and on her claim against him. Since the jury found her negligent, and since the issue of her negligence is not to be retried, the claimed error is immaterial.

Parker also argues that he should have had a directed verdict of liability on his claim for damages against Mrs. Melton, but this argument cannot be upheld because, as hereinbefore decided, there was a jury question as to Parker's negligence.

■ We come now to the question of contribution. As stated at the outset of this opinion, the trial court dismissed Parker's third-party complaint against Mrs. Melton for contribution as to any recovery by Redden, on the ground that Mrs. Melton owed *no duty* to Redden. We think this was error. The *no-duty* concept is simply a different expression of the pure or strict assumption of risk doctrine. See Prosser, Law of Torts, Hornbook Series, 3rd Ed., sec. 67, pp. 450 to 456. Since we are abolishing the latter doctrine the no-duty concept goes too. As we see it, the negligence of which the jury found Mrs. Melton guilty, i.e., illegally leaving her car standing on the main travelled portion of the highway, was negligence (a violation of duty) as to anyone who might reasonably have been foreseen to come within the field of danger created by the negligence. Surely if a valuable horse standing in a field along the road had been struck by Parker's car as a result of its caroming off the Melton car, Mrs. Melton would not have been exonerated from liability to the owner of the horse simply on the theory that she was not negligent as to the latter or owed no duty to the latter. She having been found guilty of negligence, the only bases upon which Mrs. Melton could be exonerated from liability to Redden are (1) that Redden was contributorily negligent or (2) that Mrs. Melton's negligence was not a proximate cause of the accident.

As concerns the contributory negligence question we think that properly there should be no difference in its application to Mrs. Melton from its application to Parker. If

Redden were found contributorily negligent it would be because he acted unreasonably in the circumstances that prevailed, and if so he would be barred from recovery against Parker the same as against Mrs. Melton. So, in the instant case, since the jury in effect found that Redden was *not* contributorily negligent, that possible ground of exoneration of Mrs. Melton was eliminated from the case.

■ That leaves the question of causation. It has been argued that Mrs. Melton's negligence merely created a *condition* and did not constitute a *cause*. We believe the argument is not valid. Our cases quite clearly establish the proposition that if the consequences that grow out of a negligently created "condition" are natural and probable (foreseeable), the fact that negligent conduct of another person is involved does not exonerate from liability the person who negligently created the condition—his negligence is a concurring cause. See Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137; United Fuel Gas Company v. Thacker, Ky., 372 S.W.2d 784; Roberts v. Taylor, Ky., 339 S.W.2d 653; Lexington Glass Company v. Zurich General Acc. & L. Ins. Co., Ky., 271 S.W.2d 909; Bosshammer v. Lawton, Ky., 237 S.W.2d 520. The latter two cases just cited involved illegally parked cars, and in each the negligence in leaving the car illegally parked was held to be a concurring cause of an accident which resulted from subsequent actions of a moving car. The principle involved here is simply the basic principle of the law of intervening or superseding causes—that the original negligent actor is not relieved of liability by the subsequent negligent acts of another if the subsequent acts might reasonably have been foreseen. See Ambrosius Industries, Inc. v. Adams, Ky., 293 S.W.2d 230; Mackey v. Spradlin, Ky., 397 S.W.2d 33.

■ While on this subject we should dispose of the question of what effect a finding of last clear chance on Parker's

part might have on Mrs. Melton's potential liability to Redden. (As hereinafter will appear, we are directing that a new trial be had of Mrs. Melton's claim against Parker, solely on the last clear chance issue.) It is our opinion that the matter of last clear chance as between Parker and Mrs. Melton should have no bearing on the question of their respective liabilities to Redden. There is respectable authority for that view. See Tarleton-Gaspard v. Malochee, 16 La.App. 527, 133 So. 409. We think that the basic principle of foreseeability should govern— if the fact that an automobile might negligently run into the parked Melton car was foreseeable (and we think it clearly was), Mrs. Melton should not be exonerated from liability to Redden merely because of the particular legal category of negligence of which the driver of the other car was guilty.

So, thus far in this opinion, as respects the issue of contribution, we have said (and held) that if Mrs. Melton was negligent in this case she was negligent as to Redden the same as to Parker; that if Redden was not contributorily negligent as to Parker he was not as to Mrs. Melton; and that if Mrs. Melton was negligent her negligence was a concurring cause of the accident. Now the fact is that on Mrs. Melton's claim against Parker the jury found Mrs. Melton guilty of negligence that contributed to the accident. And on Redden's claim against Parker the jury found that Redden was not contributorily negligent. Accordingly, the complete basis for liability of Mrs. Melton (concurrently with Parker) to Redden has been established. Of

course Redden did not sue Mrs. Melton, and of course the jury has not specifically found that Mrs. Melton is liable to Redden, which liability is a condition of recovery of contribution from her. See Employers Mut. Liability Ins. Co. of Wis. v. Griffin Construction Co., Ky., 280 S.W.2d 179, 53 A.L. R.2d 967; Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137. It seems to us, however, that where, as here, the jury has found all of the facts essential to liability of the person against whom contribution is sought, and a specific finding of such liability would have been a mere formality, the court should be empowered to adjudicate liability for contribution (present the necessary pleadings and absent only the formal jury finding). As a matter of fact, trial complications might well be avoided in a case such as this one, where the plaintiff is seeking recovery from only one defendant but he has brought in another party and they have asserted cross-claims for damages against each other, if the trial court would reserve the question of contribution as a matter of law to be determined by the court after the verdict is in.[1]

It is our conclusion on the contribution question that the trial court erred in dismissing the third-party complaint in which contribution was sought, and that under the circumstances the court should have entered judgment *declaring* Parker's right to contribution from Mrs. Melton. We are reversing the judgment on Parker's appeal to that extent, with directions that judgment be entered declaring the right to contribution. In this connection we should mention that a strong argument has been

---

1. This contemplates, of course, that if both parties are found to be negligent no rating of their respective degrees of fault will be made, and they will be considered to have a joint and equal liability (upon which each may require the other to pay one-half by way of contribution), as distinguished from the several and unequal liability which a jury may fix when the plaintiff has sued both tortfeasors (upon which liability there is no contribution, as pointed out in Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137).

See KRS 454.040 and Baldwin v. Wiggins, Ky., 289 S.W.2d 729. We reserve for a future time the question, not raised by the parties to this case, whether on a claim for contribution (in a situation in which the plaintiff has not sued both tortfeasors in one action) a jury should be allowed to determine that the liability of the tortfeasors, as between themselves, is several and unequal so as to preclude contribution. Cf. Brown Hotel Company v. Pittsburg Coal Company, 311 Ky. 396, 224 S.W.2d 165, dealing with *indemnity*.

made that a claim for contribution cannot be asserted or adjudicated until the party seeking contribution has *paid* the common liability. That argument was rejected by this court a few weeks ago, in Jackson & Church Division, York-Shipley, Inc. v. Miller, Ky., 414 S.W.2d 893 (decided May 5, 1967) and that decision prevails. We see no reason why an adjudication of *liability*, similar to a declaration of rights, cannot be made before the right has fully matured through payment. Of course the judgment should be that the party claiming contribution is entitled to recovery of any sums that may be *paid* by him in excess of his pro rata share of the liability. (Any dispute thereafter arising as to whether a claimed payment actually was made could be disposed of in supplementary proceedings.)

Up to this point we have disposed of all of the contentions of the appellant Parker except some minor ones relating to evidence and instructions. We shall consider them briefly.

■ A complaint is made with reference to a question and answer as to an estimate of Parker's speed (65 m. p. h.) which was entered in a state trooper's written report of the accident. However the court sustained an objection and ruled that what was contained in the report was not admissible. Counsel did not ask for any other relief. If further relief was desired, such as an admonition, it should have been requested.

■ Error is claimed in the refusal of the trial court to permit Parker to introduce charts showing normal stopping distances at different speeds. The argument is made that somehow this evidence might have counteracted inferences from the length of Parker's skid marks (95 feet) that he was traveling at an excessive rate of speed. We are not convinced. The fact that at a reasonable speed it might have taken Parker 150 feet in which to bring his car to a normal stop really has no relevancy to the question of whether the skidding of a car for 95 feet, terminated by its striking another car, is indicative of high speed. Furthermore, the probability of prejudice from exclusion of the evidence is diminished by the consideration of the fact that had the evidence been admitted the jury might well have asked themselves why Parker did not stop in the normal stopping distance, which was considerably less than the required range of his headlights.

It is contended that error was committed in regard to the refusal of the court to admit in evidence a state trooper's diagram showing the positions of the respective cars after the accident. The diagram showed the Melton and Redden cars entirely on the pavement, whereas the trooper had testified that part of the Redden automobile was off the pavement. We think it is immaterial whether the car was wholly on the pavement or whether, as the trooper testified, "the whole car was pretty well on the road." In either event it was substantially blocking the west-bound lane, which is all that is significant.

Another contention is that the trial court erred in rejecting certain instructions proposed by Parker which would have detailed specific (nonstatutory) duties of Redden. The court's ruling was based on the view that the enumerated duties were embraced in the general duty imposed upon Redden to exercise ordinary care for his own safety. The court was correct in this view. See Liberty National Bank & Trust Co. v. Raines, Ky., 416 S.W.2d 719 (decided May 12, 1967); Farmer v. Pearl, Ky., 415 S.W. 2d 358 (decided May 12, 1967).

■ Complaint is made of the refusal of the trial court to instruct on the statutory duty of Mrs. Melton in respect to the kind of taillights to be maintained on her car. If this was error no harm was done because, the jury found Mrs. Melton negligent and because, as hereinbefore discussed, Redden was not chargeable with any of Mrs. Melton's statute violations.

It is argued that the court should have given instructions requested by Parker on unavoidable accident and sudden emergency. This argument is not sustainable for the reasons given in Mullins v. Bullens, Ky., 383 S.W.2d 130, and Sloan v. Iverson, Ky., 385 S.W.2d 178.

■ The instruction with respect to Parker's duties if blinded by oncoming lights is claimed to be erroneous. The instruction technically was erroneous, for the reasons stated in Duncan v. Wiseman Baking Company, Ky., 357 S.W.2d 694, and because it imposed on Parker the duty to take such precautions as *the jury believed were necessary* under the circumstances, instead of requiring him to observe the standard of the ordinarily prudent man. However, we are of the opinion that the errors were not prejudicial, because the car with the alleged blinding lights had passed by Parker when he was still 500 feet from the Melton car so they could not have been a significant factor in the accident. At the most the lights could have prevented Parker's seeing the Melton car when he was still more than 500 feet away. They furnished no excuse for his failure to see the Melton car and become aware of its stopped position after he came within the 500 to 200 foot range.

■ Finally, complaint is made with respect to the trial court's statements and directions to the jurors after they first had brought in an incomplete verdict. The complaint is that the directions were not sufficiently clear to advise the jury that in completing the verdict they could reconsider the decision they had reached in the partial verdict. (The jury had found for Redden against Parker, but had not made any finding on the damage claims between Parker and Mrs. Melton. The court told the jury that the verdict for Redden against Parker had not been accepted and was still open to consideration by them. This statement followed an objection by Parker to a previous statement in which the court had told the jury that since they had found Parker negligent they could not consistently find for him on his claim against Mrs. Melton.) We think the directions were reasonably clear.

We now have disposed of all of the issues raised on Parker's appeal. This brings us to Mrs. Melton's cross-appeal, which presents only the single contention that error prejudicial to her claim against Parker was committed by the court in refusing to give a last clear chance instruction.

■ It is the view of the majority of this court that as concerns the issue of last clear chance the facts of this case are not distinguishable from those in Mullins v. Bullens, Ky., 383 S.W.2d 130, where the plaintiff was held entitled to a last clear chance instruction. It is true that Mrs. Melton was undertaking to maintain a lookout for oncoming traffic and was not inattentively occupying the highway, so her chance to avoid personal injury continued more nearly to the moment of collision than ordinarily is the case in a motorist-pedestrian situation. However, she testified that she did not realize that Parker was not going to avoid a collision by passing in the left lane until his car was so close that she had no opportunity left to escape the danger area. The jury could believe that this was true and that Mrs. Melton should not reasonably have sooner realized the peril. Thus the jury could find that Parker still had a clear chance after Mrs. Melton's chance was gone.

It is our view (as in Mullins v. Bullens) that a retrial, limited to the issues of last clear chance and damages, should be had on Mrs. Melton's claim for damages against Parker. On a fair trial a jury has found him negligent and her contributorily negligent. There is no need to retry those issues.

On the direct appeal the judgment is affirmed except to the extent that it dismisses Parker's claim against Mrs. Melton for contribution; to that extent it is reversed with directions to enter judgment declaring Parker's right to recover from Mrs. Melton any sum paid by him to Redden on the judg-

ment in favor of Redden in excess of half of the amount of the judgment. On the cross-appeal the judgment is reversed with directions to hold a retrial of Mrs. Melton's claim for damages against Parker solely on the issues of last clear chance and damages.

WILLIAMS, C. J., and MILLIKEN, OSBORNE and PALMORE, JJ., concur. HILL, MONTGOMERY and STEINFELD dissent on the ground that REDDEN should be held contributorily negligent as a matter of law.