RENDERED:  APRIL 21, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0216-MR

FAITH HORBACH                                          APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE BRIAN C. EDWARDS, JUDGE |
|  | ACTION NO. 20-CI-005608 |

BRIANNA M. FORSYTHE
(N/K/A BRIANNA MICHELLE LYDANNE)
AND HANSON A. LYDANNE                               APPELLEES

OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND JONES, JUDGES.

JONES, JUDGE:  Faith Horbach appeals the Jefferson Circuit Court's summary dismissal of strict liability and common law negligence claims she asserted against the above-captioned appellees stemming from a dog bite incident.  For the reasons discussed below, we affirm in part, vacate in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 21, 2019, Faith Horbach accepted a request through an internet application named "Wag!" to walk the appellees' two dogs, one of which was a terrier. Horbach arrived at the appellees' residence in Jefferson County and went into the basement to get the dogs ready. She had walked the terrier on a prior occasion without incident. This time, however, as Horbach was getting the terrier ready for the walk, it bit her on her right hand without warning. Due to her resulting injury, Horbach received treatment on her hand later that day at Baptist Health Urgent Center. Her wound also required antibiotics and, eventually, outpatient surgery in December 2019.

Horbach thereafter filed suit against the appellees in Jefferson Circuit Court. In her complaint, she alleged the appellees were liable for her damages stemming from the dog bite incident based on two legal theories: (1) strict liability; and (2) negligence.[1] Following a period of discovery, the appellees moved for summary judgment on grounds that, when their terrier injured Horbach, Horbach qualified as the terrier's "statutory owner" pursuant to KRS[2]

---

[1] Horbach's complaint asserted the appellees were liable for "premises liability" negligence, "failure to warn of their dog's violent propensities" negligence, and "gross" negligence.

[2] Kentucky Revised Statute.

258.095(5)(b)2.[3] by virtue of her contracted-for position as their terrier's dogwalker. As a result, pursuant to KRS 258.235(4)[4] and their understanding of this Court's decision in *Jordan v. Lusby*, 81 S.W.3d 523 (Ky. App. 2002), the appellees argued Horbach was consequently prohibited from suing them for any injuries their terrier may have inflicted upon her.

In her response, Horbach disagreed with the appellees' legal analysis. She also asserted that more time for discovery was required to ascertain whether the appellees knew or should have known of the terrier's violent propensities before the incident. Citing evidence and depositions that discovery had yielded to that point in the litigation, she argued in relevant part:

> Vet records from Lyndon Animal Clinic show that the dog that attacked Faith had suffered from a skin condition that the owners did not disclose to Faith for which it was prescribed medication. On the day after the attack, the owners returned the dog to Lyndon Animal Clinic AND reported an "acute mass" on the dog's right ear. Mr. Lydanne denied taking the dog to the vet after the attack or knowing of any such problem. On September 27, 2019, a few weeks before the bite, the dog's owners took [the terrier] to Lyndon Animal Clinic for a "derm exam." On the day of the attack, the dog was prescribed apoquel tablets for the ongoing skin condition. In April 2019, the owners sought treatment with the vet because the dog "has been licking at the front left paw

---

[3] KRS 258.095 provides in relevant part: "As used in KRS 258.095 to 258.500, unless the context requires otherwise: . . . (5) "Owner," when applied to the proprietorship of a dog, includes: . . . (b) Every person who: . . . 2. Has the dog in his or her care[.]"

[4] KRS 258.235(4) provides: "Any owner whose dog is found to have caused damage to a person, livestock, or other property shall be responsible for that damage."

and occasionally limping on the back right leg." At that time, the dog was still prescribed 3.6 mg of apoquel for atopy. The Defendant owners have admitted that [the terrier] has had multiple prior medical problems, including skin allergies and two prior hernias. The owners never reported any of these health conditions to Faith. These skin problems could have very well caused the dog to react in the way it did. The Defendants have acknowledged that they have no evidence that Faith did anything wrong in connection with this incident.

. . .

Although the parties have exchanged written discovery and submitted to depositions, Faith will need to review Brian[n]a Lydanne's social media accounts, which are set to private, to review the posts about her dogs and to depose other witnesses named in discovery answers who have had interactions with the dog. The Defendant owners also have stated that [the terrier] has had his nails done and has been to a doggy daycare so review of those records may provide relevant information. Further, both counsels have attempted to obtain records from Wag[!] without success.

As previously noted, the circuit court granted the appellees' motion. This appeal followed. The circuit court's reasoning behind its summary disposition of Horbach's claims, as well as other relevant facts, will be discussed in the context of our analysis below.

## II. STANDARD OF REVIEW

All of Horbach's allegations of error in this appeal emanate from the summary dismissal of her claims. In weighing her allegations of error:

-4-

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce any evidence at the trial warranting a judgment in his favor." *Steelvest, Inc., v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In *Steelvest*, the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). In ruling on a motion for summary judgment, the court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480. A party opposing a summary judgment motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*. at 481.

*Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 789-90 (Ky. App. 2012). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So, we operate under a de novo standard of review[.]" *Phelps v. Bluegrass Hospitality Mgmt., LLC*, 630 S.W.3d 623, 627 (Ky. 2021) (citations omitted).

## III. ANALYSIS

Horbach argues the circuit court erred in summarily dismissing her strict liability and negligence claims based on the appellees' proffered legal theory. Alternatively, she argues more time for discovery was required, and the circuit

court abused its discretion by granting summary judgment prematurely. Before discussing Horbach's arguments in any greater depth, it is necessary to begin our analysis with a review of why the circuit court granted the appellees' motion. In the relevant part of its order to that effect, the circuit court began by framing the parties' respective arguments:

> Defendants now seek Summary Judgment, arguing that Plaintiff was the statutory owner of [the terrier] at the time of the incident, and that assumption of the risk is a complete defense to the claims asserted. Plaintiff argues that she was not the statutory owner of [the terrier] at the time of the incident, assumption of the risk is not a complete defense in this situation, and summary judgment in this case is premature.

Thereafter, the circuit court explained:

> Two statutes primarily address the ownership issue before the Court. KRS 258.235(4) states that "Any owner whose dog is found to have caused damage to a person . . . shall be responsible for that damage." Providing clarification on the meaning of 'owner,' KRS 258.095(5)(b)(2) states that "Owner, when applied to the proprietorship of a dog, includes: (b) Every person who: (2) Has the dog in his or her care." Case law provides further guidance on the meaning of 'owner' in different contexts.
>
> For example, one such case involves a dog groomer who was bitten by a dog after she had finished grooming it and was carrying it out of the room. *Jordan v. Lusby*, 81 S.W.3d 523 (Ky. Ct. App. 2002). The groomer (Jordan) brought suit against Lusby, and ultimately the circuit court granted summary judgment in favor of Lusby. *Id*. Jordan appealed, and the Kentucky Court of Appeals affirmed the judgment of the circuit

court, holding that a dog groomer is considered an 'owner' under the statutory definition. *Id*. The rationale as to this meaning of 'owner' provided was that KRS 258.095 "was designed to expand liability to those parties who keep dogs such as kennel owners, veterinarians, and other persons who keep dogs owned by others in their care." *Id*. at 524. Ultimately, owner "does not simply mean a person with a property interest in the dog, for reasons of public policy." *Id*. Further, the statute "operates to insulate the legal owner from liability against another 'owner' of the dog." *Id*. The Court also did not see a need to create "a distinction between the legal owner or a second party owner[.]" *Id*.

Other case law supports this interpretation of owner. Regarding statutory interpretation, "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" *Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d 561, 566 (Ky. 2012). Here, "because the statute [KRS 258.095(5)] is intended to expand the class of potentially liable persons, this Court must read the statute consistently with that purpose." *Id*. In its holding, the Court ultimately found that "Aside from the actual owner of the dog, the statutory definition of *owner* mostly includes persons into whose care the dog may be committed, either directly or indirectly[.]" *Id*. at 569. Pertinent to the current case, "the statute also allows for liability when the dog is temporarily in a person's care[.]" *Id*.

Based upon case law, at the time of the biting incident, Plaintiff was the 'owner' of the [terrier] under the statutory definition found in KRS 258.095(5)(b)(2). Plaintiff had accepted Defendants' request through "Wag!" that she would walk [the terrier], and while she was getting [the terrier] ready for his walk, he was ultimately in her care. This is similar to the dog groomer in *Jordan*, wherein owner goes beyond an individual who has a property interest in the dog. Plaintiff was a second

party owner while [the terrier] was in her care, and thus was a statutory owner at the time of the incident. Additionally, per statutory interpretation rules, the statute is intended to extend liability, even when a dog is only temporarily under someone's care. Here, [the terrier] was temporarily under Plaintiff's care (at least for the time it would take to get him ready, and to walk him), therefore Plaintiff's situation falls under the statute and she was the 'owner.' Therefore, summary judgment is appropriate as to the question of ownership.

Plaintiff also argues that assumption of risk is not a complete defense to this situation. In her argument, Plaintiff cites to case law involving a discussion of what to do regarding assumption of risk in Kentucky. *Parker v. Redden*, 421 S.W.2d 586, 592 (Ky. [ ] 1967). Ultimately, the Court stated that "we are going to abolish it." *Id*. However, there is case law addressing the specific circumstances involved here that is more relevant. In the aforementioned *Jordan* case, the Court held that "This Court is persuaded . . . that when Jordan accepted the dog for grooming, she assumed the risk of being bitten by the dog." *Jordan*, [81 S.W.3d] at 524. Further, "The profession of dog grooming naturally entails a risk of being bitten by a client's dog, as do other professions involving the care of animals[.]" *Id*. at 525. Overall, "Common sense dictates that a person who grooms dogs must be deemed to be aware of the risks involved in dealing with any dog." *Id*. In regard to the issue of assumption of risk and whether it is a complete defense, in *Jordan*, the Court also held that someone dealing with dogs in such situations "cannot be deemed to have unreasonably encountered a risk that is inherent in his or her job. Therefore, this type of assumption of the risk is not subsumed by comparative fault and, hence is a complete defense." *Id*. (internal citations omitted).

Here, Plaintiff's situation is analogous to that of a dog groomer, as a dog walker is a profession that involves the care of animals. In walking dogs, there is an

inherent risk of being bitten by a dog. As stated above, using common sense, Plaintiff is deemed to be aware that a risk involved in being around and dealing with dogs is that a person may be bitten. Overall, assumption of the risk applies here, and Plaintiff did assume the risk when she accepted the "Wag!" request to take [the terrier] for a walk. Therefore, summary judgment is appropriate as to the question of assumption of the risk.

Another argument by Plaintiff is that summary judgment is premature. In Kentucky, summary judgment "is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Suter v. Mazyck*, 226 S.W.3d 837, 841 (Ky. Ct. App. 2007). In essence, "It is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628, 630 (Ky. Ct. App. 1979). Whether a party has had enough time and opportunity "must be determined within the context of the individual case" with more complex cases requiring more time. *Suter*, [226 S.W.3d] at 842. However, "In the interest of judicial efficiency, there is, of course, a limitation on the time the parties have to complete discovery[.]" *Id*. at 844. For example, in the *Jordan* case, summary judgment was found to be appropriate after a nine (9) month discovery period. *Jordan*, [81 S.W.3d] at 524.

Here, the Complaint was filed on September 30, 2020. Defendants filed their Motion for Summary Judgment on August 27, 2021. Per case law, this time frame has provided counsel ample opportunity to conduct discovery. In sum, summary judgment is not premature at this time.

We now return to Horbach's appellate arguments, the first of which is

that the circuit court erred in summarily dismissing her strict liability and

-9-

negligence claims based on the appellees' proffered legal theory. In part, we agree. Horbach asserted two theories of recovery: (1) strict liability and (2) negligence. The circuit court's analysis certainly applies to Horbach's strict liability claim; we adopt it in that respect; and we affirm to that extent. However, none of the circuit court's analysis applied to Horbach's negligence claim. And that is because the statutory interplay that factored prominently into the circuit court's analysis – *i.e.*, the interplay between KRS 258.235(4) and KRS 258.095(5) – is addressed to the concept of strict liability, not negligence. *See Maupin v. Tankersley*, 540 S.W.3d 357, 360 (Ky. 2018) (explaining these two provisions, taken together, mandate that "[a] dog owner is strictly liable for injuries caused when his dog attacks a person"); *see also id.* at 359 ("Without KRS 258.235(4) or its predecessor statutes, common law negligence would govern dog bite cases."). Strict liability is not negligence; and one who is not strictly liable is not necessarily exempt from negligence – which is a point we have recognized at least twice before in similar circumstances. *See, e.g.*, *Paige v. McCord*, No. 2017-CA-000188-MR, 2018 WL 6434518 (Ky. App. Dec. 7, 2018); *Cruz v. Henderson*, No. 2021-CA-0983-MR, 2022 WL 2898498 (Ky. App. Jul. 22, 2022) (addressing strict liability claims and common law negligence claims separately and under different legal standards in the context of dog bite liability).[5]

---

[5] We cite these unpublished cases for their illustrative value and not as authority, pursuant to

Indeed, it would defy common sense to hold that KRS 258.095 – a statute designed to "expand liability"[6] for dog owners – could be interpreted as *negating* liability for dog owners. Rather, the statute in question was simply designed to convert *part* of the liability otherwise contemplated by the common law into strict liability. *See Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d 561, 566 (Ky. 2012) (emphasis added) (explaining KRS 258.095 was "clearly part of a scheme to displace or abrogate the common law rule on dog-bite liability *in part* to expand liability, presumably to create incentives for various actors to take steps to reduce the chances of dog bites").

As for the "part" of common law that was *not* abrogated, that much can be inferred from *Jordan*. There, the only claim at issue was strict liability, and apparently for good reason. At common law, a dog owner is not liable absent knowledge of the dog's vicious propensities, *i.e.*, the "one free bite" rule. *Dykes v. Alexander*, 411 S.W.2d 47 (Ky. 1967), *superseded by statute as stated in Maupin v. Tankersley*, 540 S.W.3d 357 (Ky. 2018). In *Jordan*, we noted that no evidence demonstrated that the offending dog's *primary* owner – not the groomer, who was statutorily deemed the dog's *secondary* owner – had any knowledge of the dog's vicious propensities:

---

Kentucky Rule of Appellate Procedure (RAP) 41(A).

[6] *Jordan*, 81 S.W.3d at 524.

-11-

> Jordan does not cite any evidence in the record indicating that the dog had actually bitten anyone, nor does she cite any evidence in the record indicating that the owner had actual knowledge that the dog would bite, beyond a statement that the dog "did not like men." No other evidence that the dog had bitten a woman, or in fact any other person, is part of the record before us.

*Jordan*, 81 S.W.3d at 524.

Furthermore, the two cases from our sister states that we relied upon in support of our ultimate holding in *Jordan* – *i.e.*, that assumption of risk negated the strict liability claim at issue – both indicated that "assumption of risk" would not be a defense to a common law negligence action between a dog's primary and secondary owners. Specifically, in *Jordan*, 81 S.W.3d at 524, we cited *Tschida v. Berdusco*, 462 N.W.2d 410 (Minn. App. 1990), *overruled on other grounds in Anderson v. Christopherson*, 816 N.W.2d 626 (Minn. 2012), as support:

> [Minnesota's] statute's language defines "owner" to include "any person harboring or keeping a dog." In that case, a veterinarian's assistant sued the proprietary owner of the dog, but the Minnesota Court of Appeals held that the statute excluded the legal owner from liability to a second party owner (terms used by the Minnesota court.) We believe the Minnesota court's reasoning is correct and adopt it here; the Kentucky statute, in defining "owner" as any person who accepts custody of a dog, operates to insulate the legal owner from liability against another "owner" of the dog. By becoming an "owner" of a dog under our statute one is responsible for injuries inflicted by the dog to persons or animals. The statute does not make a distinction between the legal owner or a second party owner; we see no reason to create one here.

-12-

However, with respect to a *negligence* action between a dog's primary and secondary owners, the *Tschida* court held:

> We interpret the Minnesota dog owners' liability statute to include as an owner a second party who harbors or keeps a dog after accepting the delivery of possession and control from the legal owner. *Where there is no negligence by the legal owner*, we further interpret the statute to exclude liability of the legal owner to the second party owner for damages from being attacked or injured by the dog. Therefore, we hold that appellants are not strictly liable under Minn.Stat. § 347.22 for respondent's injuries resulting from their dog biting her while she was performing her job and the dog was in the keeping of the veterinarian and respondent, as his employee.

*Tschida*, 462 N.W.2d at 412-13 (emphasis added).

That same conclusion – that a dog's primary owner could be liable to the dog's secondary owner for common law negligence – was also echoed in *Nelson v. Hall*, 211 Cal. Rptr. 668, 165 Cal.App.3d 709 (1985), which we cited in *Jordan*, 81 S.W.3d at 525, for the following guidance:

> Lusby cites a California case, *Nelson v. Hall*, 165 Cal.App.3d 709, 211 Cal.Rptr. 668 (1985), wherein a veterinarian's assistant was deemed to have assumed the risk of being bitten by a dog during the course of the dog's medical treatment. The California court put it simply, "[a] veterinary assistant cannot be deemed to have unreasonably encountered a risk that is inherent in his or her job. Therefore, this type of assumption of the risk is not subsumed by comparative fault and, hence is a complete defense." *Nelson* at 672. We agree with the holding in the California case, and apply it to this case.

However, with respect to a *negligence* action between a dog's primary and secondary owners, the *Nelson* court qualified what it stated on page 672 of its opinion:

> This does not mean dog owners could *never* be held liable for injuries to veterinarians or their assistants. We emphasize that the defense of assumption of the risk extends only to the danger which the injured person has *knowingly* assumed, i.e., the danger the dog will bite *while being treated*.
>
> > Moreover, if a dog owner purposefully or negligently conceals a particular known hazard from a veterinarian, he or she would not be relieved of liability, for this would expose the injured person to an unknown risk. (*See Lipson v. Superior Court*, *supra*, 31 Cal.3d at p. 371, 182 Cal.Rptr. 629, 644 P.2d 822.) This question is not before us, since defendants are not accused of negligence or of knowledge of any particular vicious propensities on Amos' part.

*Nelson*, 211 Cal. Rptr. at 673, 165 Cal.App.3d at 715, n.4.

From what is set forth above, the following point is obvious and inescapable: one *part* of the common law that has not been abrogated, or otherwise converted into strict liability through the interplay between KRS 258.235(4) and KRS 258.095(5), is the *part* that involves negligence actions between a dog's primary and secondary owners. In that context, the potential for liability still *exists*, but under the auspices of the common law, not strict liability. Stated differently, a dog's secondary owner (*i.e.*, Horbach) may sue the dog's

primary owners (*i.e.*, the appellees) if the primary owners had knowledge of the dog's vicious propensities, failed to warn the secondary owner, and the secondary owner is consequently injured. *See Dykes*, 411 S.W.2d 47.

In sum, the circuit court incorrectly believed a principle that only applied to Horbach's strict liability claims also applied to her common law negligence claims. Consequently, the circuit court dismissed Horbach's negligence claims on that basis; and in doing so, it erred.

Perhaps in recognition of this fact, the appellees now devote the last five pages of their twenty-three-page brief before this Court to the proposition that the evidence of record, such as it is, does *not* support that they acted negligently in failing to warn Horbach of any violent propensities their terrier may have had. This is a stark contrast to the arguments they presented to the circuit court in their seven-page motion for summary judgment and six-page reply memorandum where, in the "argument" sections of each filing, their arguments fell under the headings "When the Incident Occurred, Plaintiff, Faith Horbach, was the Statutory Owner of the Dog at issue"; "Plaintiff's Assumption of Risk is a Complete Defense to the Claims Asserted"; "Plaintiff Voluntarily Accepted the Task of Caring for the Dog at Issue"; and "No Portion of *Jordan v. Lusby* Has Been Overturned." It further conflicts with their stated reason, as set forth in their reply memorandum, for opposing Horbach's request for additional discovery: "[N]one of the remaining

-15-

discovery mentioned will or can have any bearing on Plaintiff's status as the dog's statutory owner. Therefore, Plaintiff has had sufficient opportunity for discovery and this matter is ripe for summary judgment."

To be sure, this Court may affirm the circuit court's judgment if the record on appeal discloses any ground on which its judgment could properly have been made. *See Old Republic Ins. Co. v. Ashley*, 722 S.W.2d 55, 58 (Ky. 1986) (citation omitted). However, we lack authority to review issues not raised in or decided by the trial court. *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). Here, we find no indication from the substance of the appellees' circuit court filings, or from the substance of the circuit court's judgment set forth above, that the issue of the appellees' liability for common law negligence was properly argued or addressed below. Furthermore, we find no indication that the circuit court premised its decision to curtail further discovery on anything other than its misapprehension that the interplay between KRS 258.235(4) and KRS 258.095(5) precluded common law negligence actions between a dog's primary and secondary owners. Accordingly, we will not alternatively affirm on this point, but will instead vacate this aspect of the summary judgment and permit the circuit court to fully consider this point on remand.

As for Horbach's remaining contention that she was provided inadequate time for discovery, our disposition of this case largely moots that

question. We note, however, that her stated goal of conducting further discovery was to gather evidence of whether and to what degree the appellees had or should have had knowledge of the terrier's alleged vicious propensities – a point that is squarely at issue under the applicable law relative to her common law negligence claims, and a point that the circuit court roundly ignored in its analysis. On remand, and now armed with the applicable law, we have no doubt that the circuit court will revisit, and exercise its sound discretion to determine, whether Horbach's request for additional discovery should be granted.

## IV. CONCLUSION

In light of the foregoing, we affirm the Jefferson Circuit Court's disposition of Horbach's strict liability claims against the appellees; we vacate its dismissal of her common law negligence claims against the appellees; and we remand for further proceedings not inconsistent with this Opinion.


ALL CONCUR.


BRIEFS FOR APPELLANT:

T. Scott Abell
Louisville, Kentucky

BRIEF FOR APPELLEES:

Christopher D. Snead
Louisville, Kentucky