**Rita McDONALD, Appellant,**

v.

**Claude E. TALBOTT et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 7, 1969.

John P. Hayes, Louisville, for appellant.

George J. Long, Louisville, for appellees.

DAVIS, Commissioner.

Rita McDonald sued Claude Talbott and Dr. C. M. Talbott, committee for Claude Talbott, claiming damages for personal injuries allegedly sustained by her when she was attacked by a dog on premises owned by Claude Talbott. The trial court entered summary judgment dismissing her complaint, and this appeal challenges that action of the court.

Claude Talbott owned property situated at 1617 Bardstown Road, Louisville. The front portion of the property was occupied by a beauty shop and a real estate office.

A building at the rear of the lot was rented to a Mrs. Green who occupied it as a residence. There was a parking lot situated on the Talbott property which was used by the patrons of the beauty shop. In going to and from the parking lot, the patrons of the beauty shop had to walk near the back porch of the Green residence.

Nancy Davis, a daughter of Mrs. Green, owned a German Shepherd police dog. Although Nancy lived in Ohio, she frequently visited her mother in Louisville and apparently always brought the dog along. Most of the time when the dog was at the Green place it was kept on the back porch and evidently displayed unfriendly tendencies by barking and snarling at each passerby. On one occasion before the incident of which Mrs. McDonald complains, the dog bit a soft-drink salesman who undertook to open the door on the back porch where the dog was being kept. There was an evidentiary showing that the operators of the beauty shop repeatedly complained about the dog to Claude Talbott before he became incompetent and also complained of it to Dr. Talbott, his committee, at least once. There was no showing that the dog had ever been permitted to run loose, although it was deposed that when the owner did walk the dog on a leash she was required to wear heavy gloves. It is not clear whether this was to protect her hands against the strong tug of the animal or whether the dog would snap at her. There was no showing that either of the Talbotts had been advised of the necessity for wearing gloves when handling the dog on a leash. The dog had broken a number of window panes on the porch during the period of his confinement there, and the beauty shop operators expressed their fears that sooner or later the dog would break out of the porch.

KRS 258.275 deals with liability of the owner of a dog that bites a person, but that statute does not purport to impose such liability on a nonowner of the dog. As a general proposition, it has been written often that a landlord is not liable for the negligence of his tenants in the use of leased premises. See Pinnell v. Woods, 275 Ky. 290, 121 S.W.2d 679; Green v. Asher Coal Mining Company, Ky., 377 S. W.2d 68. It was recognized in Green v. Asher Coal Mining Company that there are exceptions to that rule, and one of the exceptions was found to be applicable in that decision. The question thus is narrowed to whether a landlord may be liable for injuries sustained by third persons lawfully on publicly open portions of leased premises inflicted by a tenant's animal having dangerous propensities known by the landlord. If that question is answered affirmatively, it remains to determine whether the present case is one in which the requisite conditions precedent to liability appear.

Our attention has been directed to two decisions of inferior courts of New York which deal with the problem at hand. One of these is Siegel v. 1536-46 St. John's Place Corporation, 184 Misc. 1053, 57 N. Y.S.2d 473, in which it was held that the owner of a multiple-dwelling apartment building was liable for injury to a person, lawfully in the hall of that building, who was attacked and injured by a German police dog kept in the building by a tenant. The basis for the decision in Siegel is stated in the opinion:

"Inasmuch as this was a fifty-two family multiple dwelling, the public halls and stairs of which were open and frequented by tenants and their family members as well as others having business and social relations therewith, it became a continuing duty upon the owner of this building to keep such common ways in a reasonably safe condition resultant upon such known general usage and to exercise such care in the premises as a reasonably prudent person might under the same circumstances. Such duty extended to the exclusion of known vicious animals from frequenting thereabout. * * *. The evidence indicates prior notice to defendant's officer of the dog's presence in and about the public halls

and its trend toward viciousness. Such owners had control of the premises with power to expel the dog and its owner as well. It follows that liability ensued." Id. 57 N.Y.S.2d 474.

Cited in support of the just-quoted statement in Siegel are Simpson v. Griggs, 58 Hun. 393, 12 N.Y.S. 162; Andrews v. Jordan Marsh Co., 283 Mass. 158, 186 N.E. 71, 92 A.L.R. 726; Gallagher v. Kroger Grocery & Baking Company, Mo.App., 272 S. W. 1005; and Harris v. Fisher, 115 N.C. 318, 20 S.E. 461, 44 Am.St.Rep. 452.

In a later New York case styled Denagy v. Doscher, 40 Misc.2d 643, 243 N.Y.S.2d 575, a defendant landlord was held not liable for injuries sustained when a tenant's known vicious dog attacked an infant plaintiff. In the brief opinion in that case, the court pointed out that there was no allegation that the landlord had any control of the property where the dog was kept, but the court made the flat statement: "The rule of liability that permits recovery against the owner of a dog who knows of the vicious propensities of the dog has not been extended to a landlord who leased the property to the owner of the dog." In Denagy the court then cited the Siegel case. It is difficult to discern from the Denagy opinion how the court could have cited Siegel in support of its conclusion.

In 17 A.L.R.2d 459, et seq., is an annotation dealing with the question of injury from animals in public places. An examination of that annotation discloses that as a general proposition one who owns premises to which the public is invited is under a general duty to exercise ordinary care to keep those premises in a reasonably safe condition.

It appears from an examination of the evidentiary material that the appellant made a showing of the existence of genuine issues of fact relating to the known dangerous propensities of the dog and the knowledge of those propensities on the part of the Talbotts. Although it is

claimed for the Talbotts that so far as they knew the dog was always kept on the porch or walked on a leash, in light of the repeated complaints made to them concerning the dog's apparent vicious tendencies, it seems to us that a genuine issue of fact is created as to whether the Talbotts took appropriate steps to guard against the very incident of which the appellant complains.

We express no view as to what ruling may be appropriate when all of the evidence has been developed, but hold that it was improper to enter summary judgment against the appellant in light of the existence of genuine issues as to material facts.

The judgment is reversed for further proceedings consistent with the opinion.

All concur.