Brandon BENNINGFIELD (By and Through his Mother and Next Friend, Laurie BENNINGFIELD), Appellant,

v.

Helen ZINSMEISTER, Deceased; and Wade Zinsmeister, Appellees.

No. 2009–SC–000660–DG.

Supreme Court of Kentucky.

June 21, 2012.

As Modified June 25, 2012.

562

Vanessa B. Cantley, Bahe, Cook, Cantley & Nefzger, PLC, Louisville, KY, Counsel for Appellant.

Douglas Bruce Taylor, Taylor Law Office, Louisville, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

Under Kentucky's dog-bite liability statutes, KRS 258.095 and .235, the owner of a dog is strictly liable for damages caused by the dog. This case presents the questions whether a landlord can be liable under the statutory scheme's broad definition of "owner" and whether that liability can extend to injuries caused by a tenant's dog off the leased premises. We hold that a landlord can be the owner of a tenant's dog for the purposes of liability under certain circumstances, but that any such liability extends only to injuries caused on or immediately adjacent to the premises. For that reason, the landlord in this case cannot be liable under the statutes.

## I. Background

Brandon Benningfield, an eight-year-old boy, and his sister were walking in their neighborhood when they were approached by a male rottweiler in the middle of the street. Benningfield's sister warned him to stand still, but he instead ran. The dog chased and attacked him. As a result of the attack, Benningfield suffered numerous injuries, including tears to his scalp, face, arms, and legs, which required surgery and a substantial hospital stay.

The dog was owned by Dominic Harrison. It and several other dogs were being kept by Harrison's parents, Sheila Harrison and Ed Roach, in an enclosed pen in their fenced-in backyard. Harrison's parents lived in a single-family residence rented from the Appellees, the Zinsmeisters, who lived next door. The attack occurred on the sidewalk across the street from the

rented property after the dog somehow escaped from the backyard.

The Zinsmeisters undoubtedly knew of the dog's presence at the house, having initially given oral permission to the tenants to keep it. But they claim to have later revoked that permission.[1] Nonetheless, they took no affirmative steps to make sure the dog was removed from the property except to ask or tell the tenants to remove the animal from the premises.

Benningfield's mother, Laurie Benningfield, filed suit against Harrison, as the actual owner of the dog, and the Zinsmeisters, as statutory owners of the dog under KRS 258.095(5), claiming they were strictly liable for the attack under KRS 258.235(4) and 258.990(2). Harrison settled. The Zinsmeisters moved for and were granted summary judgment under *Ireland v. Raymond,* 796 S.W.2d 870, 871 (Ky.App.1990), which held that a landlord's liability for attacks by his tenant's dog does not extend to attacks that occur off the leased premises.

The Court of Appeals affirmed, also relying on *Ireland.* In addition to noting that *Ireland* limited landlord liability to attacks that occur on the leased premises, the court also noted that the case requires proof that the landlord knew of the tenant's dog and its dangerous propensities. The court declined the Appellant's invitation to overturn *Ireland* in light of the plain meaning of KRS 258.095(5), which defines "owner" of a dog as including "every person who keeps or harbors the dog, or has it in his care, or permits it to remain on or about premises owned or occupied by him," stating that "to do so would create a slippery slope of liability which the legislature did not intend." The court further stated that "[t]o apply the meaning suggested by Benningfield would

create a society in which property owners would no longer allow dogs on public and private property for fear of being sued."

In a motion for discretionary review, the Appellant raised several issues, including whether a landlord who permits a tenant to keep a dog on the leased premises is an "owner" under KRS 258.095(5) and therefore liable for damage caused by the dog under KRS 258.235(4) and 258.990(2). This Court granted review to answer these questions to the extent necessary to resolve this case.

## II. Analysis

This case turns on the interpretation of two statutes, one creating a form of strict liability for the owner of a dog, KRS 258.235(4), and one defining the "owner" of a dog for the purposes of liability, KRS 258.095(5). The liability statute simply states: "Any owner whose dog is found to have caused damage to a person, livestock, or other property shall be responsible for that damage." KRS 258.235(4). The word *owner,* as the term is used in KRS 258.235(4), is defined as follows: " 'Owner,' when applied to the proprietorship of a dog, includes every person having a right of property in the dog and every person who keeps or harbors the dog, or has it in his care, or permits it to remain on or about premises owned or occupied by him...." KRS 258.095(5).

### A. A landlord can be an "owner" of a tenant's dog.

Under the literal language of the statute, many landlords would be included in the definition of "owner." A landlord who owns the property he leases and who allows a tenant to keep a dog is a "person who ... permits [the dog] to remain on or

---

1. However, according to one of the Zinsmeisters' interrogatory answers, the lease with their tenants had "a clause ... stating that no pets were allowed without prior written consent of the landlords."

about premises owned.... by him," and so he is an "owner" of the dog under the statute. Although there may be a factual dispute about who really owns the premises or whether the landlord permitted a dog to remain on the premises,[2] the statutory definition does not categorically exclude all landlords from the definition of *owner*. Indeed, it literally includes some of them within the definition. Thus, the plain meaning of the statute would include such a landlord under the definition of a dog's owner, assuming permission to keep the dog could be shown.

As the Zinsmeisters note, however, this Court's predecessor held that a landlord is not an owner of a dog for the purpose of establishing liability when an earlier, almost identical version of the liability statute was in effect. *See McDonald v. Talbott*, 447 S.W.2d 84 (Ky.1969) (holding that a landlord is not liable for an attack by a tenant's dog under KRS 258.275, the predecessor of the present liability statute, though leaving open the possibility of a common law negligence action). At that time, the liability statute also extended liability to owners, and the statutory definition of owner was the same.[3] Since that decision, the General Assembly has deleted the old liability statute and re-adopted it in substantially the same form at a different location in the Kentucky Revised Statutes. *See* 2004 Ky. Acts ch. 189, §§ 18, 31 (deleting KRS 258.275 and enacting the present version of KRS 258.235(4)).

This arguably suggests that Kentucky's highest court has interpreted the liability statutes to exclude landlords and that the General Assembly has acquiesced to that interpretation. "[W]hen a statute has been construed by a court of last resort and the statute is substantially re-enacted, the Legislature may be regarded as adopting such construction." *Hughes v. Commonwealth*, 87 S.W.3d 850, 855 (Ky. 2002) (quoting *Commonwealth v. Trousdale*, 297 Ky. 724, 181 S.W.2d 254, 256 (1944)); *see also id.* ("[T]he failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted." (quoting *Rye v. Weasel*, 934 S.W.2d 257, 262 (Ky.1996)) (second alteration in original)). This canon of interpretation is sometimes called the "reenactment doctrine." *Commonwealth v. Morris*, 142 S.W.3d 654, 661 (Ky. 2004).

The problem with this approach is that *McDonald* did not interpret the statute in which the definition of "owner" appeared. Indeed, KRS 258.095(5), which was in effect at that time, was *never* even mentioned in the case. Admittedly, *McDonald* discussed the liability statute that was in effect at the time, KRS 258.275, but it never mentioned the owner-definition statute, KRS 258.095(5).[4] *See McDonald*, 447

---

**2.** In this case, for example, the lease included a no-dogs provision and the landlords claimed that they had asked the tenant to remove the dog.

**3.** The liability statute then in effect read: "Any owner or keeper of a dog which has killed or injured livestock or poultry or which has bitten such livestock or poultry so severely as to necessitate its destruction, or injured or damaged any person or property, shall be liable to the owner of such livestock or poul-

try, or person in a civil action for all damages and costs, or to the Commonwealth." KRS 258.275.

**4.** The owner-definition statute, KRS 258.095(5), has not changed since it was enacted in 1954. The liability statute that was in effect when *McDonald* was decided, KRS 258.275, was repealed in 2004 and reenacted in a slightly different form as KRS 258.235(4). The substance of the new liability statute is very similar to the old liability statute.

S.W.2d at 85. In reaching its decision, the Court explained:

> KRS 258.275 deals with liability of the owner of a dog that bites a person, but that statute does not purport to impose such liability on a nonowner of the dog. *As a general proposition, it has been written often that a landlord is not liable for the negligence of his tenants in the use of leased premises.*

*Id.* (emphasis added).[5] Rather than looking at whether a landlord is an owner under KRS 258.095(5), the Court looked at the "general proposition of law" and what has been "written often" concerning landlord liability. In other words, the Court looked to the common law, not the statute. Even though the definition of *owner* was on the books at that time, the Court simply failed to consider it.[6] At best, we can assume the *McDonald* Court was aware of the owner-definition statute and that its decision finding the landlord was not an owner of the dog was an implicit interpretation of the statute. But it seems more likely that the Court simply missed the statute.

But even if we were inclined to presume an implied application of the owner statute in *McDonald,* the reenactment doctrine laid out in *Hughes* would not apply because it is highly unlikely the legislature knew of the *McDonald* interpretation of the statute. The case is not listed in the annotations to KRS 258.095 included in *Michie's Kentucky Revised Statutes,* which

is published by LexisNexis, nor is it included in the annotations to the statute on Westlaw. Thus, it appears that neither of the major legal publishing houses made the connection between the statute and the case. Yet these resources are what the General Assembly would likely turn to as it searched for any connection. A text search for "KRS 258.095(5)" on an online database would work no better because, again, the statute does not appear in *McDonald.* Consequently, the rationale for the rule in *Hughes*—that a legislature is presumed to know whether and how a high court has interpreted a statute—would be undermined by applying the rule in this case because there is no reasonable connection between the statute and *McDonald.*

Moreover, the rule in *Hughes* would be inapplicable in this case because the statute in question, KRS 258.095(5), has never been reenacted. The definition of *owner* to be applied in this case has been the same since its enactment in 1954. *See* 1954 Ky. Acts ch. 119, § 12. Unlike the liability statute, KRS 258.235 (and formerly KRS 258.275), the definitional statute has never been amended, moved, recodified, or otherwise readopted since its initial enactment. Yet the rule in *Hughes* is called the "reenactment doctrine," *Morris,* 142 S.W.3d at 661, for a good reason: It requires the legislature to have revisited the statute after a decisive judicial interpretation before any adoption of such an

---

5. The Court went on to consider the possibility that "a landlord may be liable for injuries sustained by third persons lawfully on publicly open portions of leased premises inflicted by a tenant's animal having dangerous propensities known by the landlord." *McDonald v. Talbott,* 447 S.W.2d 84, 85 (Ky.1969). The Court left open the possibility that such a claim could proceed. It did not expressly hold so, though it reversed the case as having been improperly decided on summary judgment motion due to an issue of fact about the

landlord's knowledge, which evinces an implicit holding that such a claim is viable in Kentucky. *Id.* at 86.

6. This error was amplified by the Court of Appeals in a later case, *Ireland v. Raymond,* 796 S.W.2d 870 (Ky.App.1990) (holding that a landlord cannot be liable for a dog attack occurring off the leased premises), which failed to mention *any* of the statutes from KRS Chapter 258, not even the liability statute.

interpretation can be presumed. The General Assembly has never spoken, impliedly or otherwise, on this Court's construction of the owner-definition statute, assuming one has happened, because it never touched the statute after 1954.

■ Without the rule of construction used in *Hughes* and other cases, *McDonald* has at best common law precedential value. And although adherence to *stare decisis* is the default approach in our jurisprudence, it is not an immutable rule. This Court will depart from previous decisions where "there are sound legal reasons to the contrary." *Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky.1984). A statute directly on point—and ignored by earlier decisions—surely fits that bill.

Moreover, the statute is clearly part of a scheme to displace or abrogate the common law rule on dog-bite liability in part to expand liability, presumably to create incentives for various actors to take steps to reduce the chances of dog bites. It makes sense, then, to include landlords, who are more likely to be responsible and to foresee future problems than many tenants. While an irresponsible tenant may only want to keep a dog because of companionship or security, without thinking about the difficulty and danger that such an animal might pose, a landlord with more to lose is more likely to anticipate the danger and difficulty, however rare, and plan for such a contingency.

Such plans could range from barring dogs from the property, and thus preventing the problem from ever occurring (or at least decreasing its likelihood, notwithstanding a tenant who acts in violation of the lease), to purchasing adequate insurance, which could be used to pay for injuries after the fact. That these are mere possibilities does not mean the legislature did not act in light of them. And in its most natural reading, the statutory scheme does reflect this type of policy

concern. By including responsible landlords under the umbrella of dog *owners*, at least under some circumstances, and thereby extending liability for dog attacks to them, the legislature decreases the likelihood of dog attacks, since many landlords will bar dogs (which will reduce opportunities for attacks), and increases the likelihood that an innocent dog-attack victim can be made whole, at least to the extent the law can do so.

The General Assembly has commanded: "*All* statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. . . ." KRS 446.080(1) (emphasis added); *see also id.* ("[T]he rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state."). Because the statute is intended to expand the class of potentially liable persons, this Court must read the statute consistently with that purpose.

■ While some may believe this is a bad rule or poor policy, it is the prerogative of the General Assembly to set public policy. *See Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky. 1992) ("The establishment of public policy is granted to the legislature alone. It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest. It is the prerogative of the legislature to declare that acts constitute a violation of public policy."), *overruled on other grounds by Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152 (Ky.2009). By enacting the statute, the legislature has proclaimed the public policy of this state, and this Court is bound to interpret the statute to effectuate that policy.

■ In light of this, we conclude that only the plain meaning of the statute is

workable. It has no ambiguity and plainly states that a person who permits a dog to remain on premises he owns shall be deemed an *owner* for purposes of the dog-bite liability statute. This can include a landlord. This reading furthers the policy of the statute to expand liability so that dog-bite victims can be compensated, which in turn gives incentives to potential owners of dogs to alter their behavior.

**B. The statute's liability does not extend to injuries occurring off the leased premises.**

The next questions are whether the landlord in this case was an owner and was liable. The Court of Appeals addressed the first question by excluding landlords generally from the definition of owner as a matter of law. As described above, such a reading of the statute is simply unworkable.[7] Still, that landlords can be statutory owners of their tenants' dogs does not necessarily mean that all landlords are owners.

A plaintiff must still show that the defendant was an owner of the dog under the statute. Under the language of the statute, this requires a showing that the landlord permitted a dog to remain on premises he owns. But what exactly does it mean to permit a dog to remain on a premises? This question is important because it controls whether liability extends wherever the dog goes.

For example, a very literal reading of the statute suggests that the landlord, as a statutory *owner*, stands in the shoes of the dog's actual owner. Thus, once a landlord permits the dog to remain on his property, he will be liable in any instance where the dog's actual owner could be liable. But

such a broad rule can have absurd consequences. For example, if the tenant (and actual owner) takes the dog along on vacation and an attack occurs 500 miles away, this rule would extend liability to the landlord, to whose property the tenant plans to return.

It is unreasonable to allow a landlord's liability to track wherever the dog may roam or be taken. To say that once a landlord becomes a statutory owner of a dog, he is forever included under that umbrella, gives rise to absurd consequences. There must be some limit on that liability, which arises only because of the statutory definition of "owner." The difficulty lies in deciding where to draw the line.

One possible limit is hinted at in *McDonald* and *Ireland*: that a landlord's liability can at most extend to dog attacks occurring on the leased premises. This rule, too, can have absurd results. Consider this example: A dog steps a few inches away from an invisible property line, which has the appearance of being a continuation of the yard, and attacks a young child; the actual owner of the dog is judgment proof, and the landlord encouraged the presence of the dog. The landlord would not be liable under the premises-only rule, with the difference between liability and non-liability being but a few inches that could not reasonably be seen as off the premises.

The best way to resolve this is to look to the language of the statute. KRS 258.095(5) itself suggests a third option to limit when a landlord, who otherwise meets the statutory definition, can be an owner and thus liable under KRS 258.235. The statute makes a person an *owner* only when he permits a dog to remain "on or

---

7. The Court of Appeals resolved the second question—whether a landlord can be liable—by stating that a landlord can only be liable if he knows of the dog's viciousness. Benningfield raised this issue, along with whether the statute creates strict liability, in his motion for discretionary review. While our resolution of this case does not require that we answer these questions explicitly and apply that aspect of the law to these facts, the historical application of the statute, as opposed to the common law rule, suggests the answer.

about" premises he owns. We read this to mean that a landlord is only an *owner* when the dog is within the landlord's permission, that is, when it remains on or about the premises. Because liability depends on ownership, which under the statute depends on permission, then a landlord's liability is limited by the scope of the permission, so that it exists only when the attack occurs "on or about" the premises.

Though ordinarily used with reference to time, the phrase "on or about" is also used geographically. *Black's Law Dictionary* has described it as a "phrase used in reciting the date of an occurrence or conveyance, or the location of it to escape the necessity of being bound by the statement of an exact date, or place; approximately; about; without substantial variance from; near." *Black's Law Dictionary* 1088 (6th ed.1990). The phrase clearly includes instances occurring *on* the property, but it also includes instances occurring *about* property. Whether an attack occurs on a premises is simple enough to resolve. The more difficult question would be whether an attack is near enough to be "about" a premises.

Though this aspect of the statute has not previously been interpreted, similar language exists in other statutes and has been construed by the courts of this Commonwealth. This Court's predecessor read the language "on or about his person" in a

criminal statute to "mean ... in such proximity to the person as to be convenient of access and within immediate physical reach." *Collier v. Commonwealth*, 453 S.W.2d 600, 601 (Ky.1970); *see also Hampton v. Commonwealth*, 257 Ky. 626, 78 S.W.2d 748, 750 (1934) ("[T]he word 'about' means nearby, or within reach of the person, and hence that a revolver hidden in the door of an automobile driven by the accused is concealed about the accused's person.") (quoting *Porello v. State*, 121 Ohio St. 280, 286, 168 N.E. 135, 137 (1929)); *id.* at 749–50 (" '[C]oncealed upon or about his person' means concealed in such proximity to the person as to be convenient of access and within immediate physical reach.").

■ This suggests the most reasonable reading of the phrase "on or about." It means on the property or so close to it as to be within immediate physical reach. Thus, it would include an attack that occurs immediately adjacent to the property—for example, on the sidewalk or just off the curb—but nothing farther away.

■ The attack in this case, occurring across the street, was outside the limited range of "on or about" the premises. For this reason, the Zinsmeisters were not owners of the dog in this instance, and thus cannot be liable under the dog bite statute.[8]

8. Even if the attack had occurred on or about the premises, the Appellees' ownership status would not be clear because there are questions about whether they actually permitted the dog to remain on the premises, having asked their tenant to remove it and having included a no-dogs provision in the lease. The Appellant, on the other hand, claimed that the Appellees knew of the dog, gave permission for it to be on the premises initially, and took no affirmative steps to have it removed after allegedly revoking permission. We need not decide those issues. But even if we could reach them, a remand would be necessary, as such factual questions are more

appropriately decided for the first time at the trial level, either by a jury or by a judge in a bench trial.

We also note that this interpretation of how liability can arise under the statute in no way affects a claim that could be brought against a landlord under the common law. While that law has been abrogated to the extent that it is simpler to establish liability under the statute, the General Assembly in no way removed the ability of a plaintiff to bring a claim under the one-free-bite rule or a theory of negligence, assuming, of course, the plaintiff can prove the claim.

This raises one more question: whether this rule applies to a land owner on whose land the dog is temporarily permitted. While that is not the scenario presented by this case, addressing it is necessary to fully show the contours of the rule laid out in this opinion. The most troubling example is when a dog enters a public park in which dogs are allowed. Should the owner of the park, usually a city (and with questions of sovereign and related immunities aside), be liable for an attack that occurs on or about the premises of the park? It seems unlikely that the legislature intended for the owner of such a park to be liable. The dog is only on such land temporarily; the park is not the site of the dog's care or habitation; and the owner exercises even less control over the land than the average residential or commercial landlord.

■ Again, this can be resolved by reference to the statute. Aside from the actual owner of the dog, the statutory definition of *owner* mostly includes persons into whose care the dog may be committed, either directly or indirectly, for example, by taking in a stray ("keeps or harbors the dog, or has it in his care"). The last category in the statute only extends to a person who permits the dog "to remain on or about premises owned or occupied by him." The common thread that runs through these categories is that they all relate to the care or habitation of the dog, by which the statute incorporates something akin to "domicile" or tenancy for dogs. Further, the statute also allows for liability when the dog is temporarily in a person's care, which focuses liability on a homelike setting. See, e.g., *Jordan v. Lusby*, 81 S.W.3d 523, 524 (Ky.App.2002) (holding that a dog groomer was an "owner" under the statute). Thus, where ownership is premised on permission for the dog to remain on property, there must be an element of tenancy, even if for a short period of time, and not simply a passing use of the property. Liability does not extend to temporary excursions onto another's property, even when done so with the landowner's permission.

### III. Conclusion

In summary, this Court concludes that a landlord can be the statutory owner of a tenant's dog for the limited purpose of establishing the landlord's liability under KRS 258.235(4), if the landlord has permitted the dog to be on or about the premises. The landlord's ownership status and resulting liability are limited by the scope of the landlord's permission, meaning liability can only arise for attacks occurring on or about the premises. Though Benningfield has raised other questions of law in this appeal, answering them is unnecessary to resolve this case. Because the attack in this case occurred off the premises and the dog was therefore beyond the scope of any permission that may have been given, the landlord cannot be liable under the statutory scheme. For these reasons, the judgment of Court of Appeals is affirmed.

ABRAMSON and CUNNINGHAM, JJ., concur. SCHRODER, J., dissents but concurs in result by separate opinion in which SCOTT, J., joins. MINTON, C.J., concurs in part as to the opinion of the court but dissents as to the result by separate opinion in which VENTERS, J., joins. VENTERS, J., concurs in part as to the opinion of the court but dissents as to the result by separate opinion in which MINTON, C.J., joins.

SCHRODER, J., dissenting but concurring in result:

The plurality changes the law to hold that a landlord can now be the statutory "owner" of a tenant's dog for purposes of Kentucky's dog bite statute, and, therefore, strictly liable for injuries to a victim inflicted by the tenant's dog's bites. I

dissent, and would follow our long-established interpretations of Kentucky's dog bite statutes which have never considered the landlord an "owner" of a tenant's dog. Further, while our case law recognizes that a landlord can have liability for dog bites under general negligence principles, summary judgment in favor of the landlords was nevertheless proper under the facts of this case. Accordingly, I would affirm the Court of Appeals.

The Appellant sued the landlords (Zinsmeisters) and Dominic Harrison for personal injury, alleging strict liability under the dog bite statute,[9] as well as liability under common law negligence. The trial court granted the landlords' motion for summary judgment on grounds that, pursuant to *Ireland v. Raymond*, 796 S.W.2d 870 (Ky.App.1990), they were not an "owner" of the dog, nor liable for injuries inflicted as a result of their tenants' alleged negligence. Accordingly, the trial court dismissed the claim as to them. The Court of Appeals affirmed the summary judgment and this Court granted discretionary review.

Before this Court the Appellant contends that the statutory definition of "owner" in KRS 258.095(5) encompasses landlords, making them strictly liable for their tenants' dog's bites under KRS 258.235(4), and, if not, that the landlord should still be accountable for ordinary negligence. Therefore, the Appellant contends the trial court erred in granting summary judgment in favor of the landlords.

In 1954, our common law on dog bites was modified by the General Assembly with the enactment of KRS 258.275(1). Common law recognized "one free bite" or "knowledge of viciousness" before an owner was liable for dog bite injuries. *See Dykes v. Alexander*, 411 S.W.2d 47, 48 (Ky.1967).[10] The new statute provided that:

> Any *owner* or keeper of a dog which has killed or injured livestock or poultry or which has bitten such livestock or poultry so severely as to necessitate its destruction, or injured or damaged any person or property, shall be *liable* to the owner of such livestock or poultry, or person in a civil action for all damages and costs, or to the Commonwealth.

KRS 258.275(1) (emphasis added). "Owner" was defined in KRS 258.095(5):

> "Owner," when applied to the proprietorship of a dog, includes every person having a right of property in the dog and every person who keeps or harbors the dog, or has it in his care, or permits it to remain on or about premises owned or occupied by him.

In 2004, KRS 258.275 was repealed[11] and former KRS 258.275(1) was reenacted as KRS 258.235(4), which reads: "Any owner whose dog is found to have caused damage to a person, livestock, or other property shall be *responsible* for that damage."[12] (Emphasis added.)

Statutory interpretation involves a *de novo* review by the appellate court. *Floyd County Bd. of Educ. v. Ratliff*, 955 S.W.2d

---

**9.** While not an issue in this case, I note that the Appellant incorrectly sued under KRS 258.990(2). The parties started referring to KRS 258.235(4) (the correct statute) in the summary judgment motion and response. The provisions are similar. KRS 258.235(4) holds an owner "responsible" for dog bites (civil liability), whereas KRS 258.990(2) holds an owner "liable" for dog bites (but pertains to restitution in criminal proceedings).

**10.** *Dykes* also discussed an earlier, since repealed, Kentucky Statute Section 68 (later 68a) passed by the General Assembly in 1893 and in effect until 1918, which changed the common law.

**11.** 2004 Ky. Acts ch. 189, § 31.

**12.** 2004 Ky. Acts ch. 189, § 18.

921, 925 (Ky.1997). The only real difference between KRS 258.275(1) and KRS 258.235(4) is the substitution of the word *responsible* for the word *liable*, which substantially means the same thing. *Carmical v. Bullock*, 251 S.W.3d 324, 326 (Ky. App.2007). The definition of "owner" in KRS 258.095(5) has remained unchanged since 1954.[13] Therefore, the case law prior to the 2004 reenactment is relevant in our interpretation.

*McDonald v. Talbott*, 447 S.W.2d 84 (Ky.1969), involved a tenant's German shepherd dog allegedly known by both the landlord and tenant for its dangerous propensities. The dog bit a person in the parking lot, which was owned by the landlord and open to all tenants and business invitees (under the control of the landlord). The victim sued the landlord for personal injuries, and the trial court granted the landlord summary judgment, dismissing the victim's complaint. On appeal, the *McDonald* Court recognized at the outset that KRS 258.275 did not impose liability for a dog bite upon a non-owner of a dog. The definition of "owner" in KRS 258.095(5) at the time of *McDonald* is the same definition we have today. Implicit in the *McDonald* decision, which found no *statutory* liability, is that the definition of "owner" did not include a landlord.

Therefore, the *McDonald* Court went on to consider possible liability of the landlord under general negligence principles. The Court recognized that a landlord has a duty to exercise ordinary care to keep those premises under his control and open to the public in a reasonably safe condition. *Id.* at 86. Such duty requires the landlord exclude known vicious dogs from his parking lot. Summary judgment was deemed inappropriate because there were issues of material fact as to the landlord's knowledge of the dog's vicious propensities. *Id.*

In *Ireland v. Raymond,* 796 S.W.2d 870 (Ky.App.1990), similar to the case *sub judice,* the bite by the tenant's dog occurred off the landlords' property. In *Ireland,* two pitbull dogs escaped from the leased premises and attacked a third person either on the third person's own property or on the public right of way. The trial court granted summary judgment for the landlords, distinguishing the case from *McDonald,* because

> here the injuries were not received on the leased premises, and there is nothing to indicate that the landlords had any control of the area where the injuries were received. It would be unthinkable to extend the liability of a landlord to include any area to which a tenant's dog might roam. Kentucky cases cannot be stretched to cover such a situation.

*Id.* at 871. *Ireland* did not discuss the statutory definition of "owner," deciding the case strictly on common law negligence. Because the attack took place under circumstances over which the landlords had no control, and there was no evidence the landlords had knowledge that the dogs were vicious, the *Ireland* Court concluded that the trial court properly granted summary judgment in favor of the landlords. As in *McDonald,* implicit in the *Ireland* Court's opinion is that a landlord is not a statutory owner. If the landlords were statutory owners, liability would have attached and there would have been no need to discuss a negligence claim against the landlords.

In *Jordan v. Lusby,* 81 S.W.3d 523 (Ky. App.2002), a dog groomer sued Lusby, a dog owner (the person with the property interest in the dog) for a bite to her face. The dog groomer had accepted Lusby's Chow for grooming. After finishing grooming the dog, the groomer was carry-

**13.** 1954 Ky. Acts ch. 119, § 12.

ing the dog out of the room when the dog bit her. The dog groomer contended the dog's owner was strictly liable under KRS 258.275. The Court of Appeals reviewed the definition of "owner" in KRS 258.095(5), " 'every person having a right of property in the dog and every person who keeps or harbors the dog, or has it in his care, or permits it to remain on or about premises owned [or occupied] by him,' " and concluded that "[t]he statute was designed to expand liability to those parties who *keep* dogs, such as kennel owners, veterinarians, and other persons who *keep* dogs owned by others in their care, as well as any person who *keeps* a dog owned by another on their property." *Jordan,* 81 S.W.3d at 524 (emphasis added). The court concluded that the groomer was a keeper of the dog and thus a second party "owner" under the statute. *Id.* The court held that the legal owner (Lusby) was not statutorily liable to another "owner" of the dog (the groomer).[14]

*Jordan* recognized that the statutory definition of "owner" includes a person *who accepts custody* or *keeps* the dog for the legal owner. A "keeper" is "[o]ne who has the care, custody, or management of something and who usually is legally responsible for it <a dog's keeper> <a keeper of lost property>."[15] The dog groomer in *Jordan* took the dog to care for it (to groom it). Until the property owner of the dog returned to claim the dog, the dog's care and custody, or management of the dog, remained with the groomer. A landlord is not a "keeper" of a dog under the *Jordan* rationale. The tenant/dog owner still manages, cares for, and has custody of the dog during the tenancy. At

no time does a landlord assume any of these responsibilities. The landlord rents the premises to the tenant/dog owner, who pays a fee to use the property—not a fee to care for, manage, or take custody of the dog. Accordingly, the *Jordan* rationale would not elevate a landlord to a statutory "owner."

As in the present case, in *Hughes v. Commonwealth,* 87 S.W.3d 850, 855 (Ky. 2002), it was argued that this Court's prior interpretation of a statute was "not what the statute plainly and unambiguously stated." Nevertheless, applying the reenactment doctrine, we held that the fact that the statute had been subsequently amended by the legislature without addressing our prior interpretation was strong evidence that the legislature agreed with our interpretation.

"It is a generally recognized rule of statutory construction that when a statute has been construed by a court of last resort and the statute is substantially reenacted, the Legislature may be regarded as adopting such construction." *Commonwealth v. Trousdale,* 297 Ky. 724, 181 S.W.2d 254, 256 (1944). Further, "the failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted." *Rye v. Weasel,* Ky., 934 S.W.2d 257, 262 (1996).

*Id.* at 855–56. Likewise, in the case before us, we have statutes passed by the General Assembly in 1954, and court interpreta-

---

**14.** The court went on to hold, with regard to negligence principles, that as a dog groomer, Jordan had assumed the risk of being bitten by the dog. *Id.* at 524–25. The court further held that this type of assumption of risk is not subsumed by comparative fault and, hence, is a complete defense in the absence of specific

knowledge by the dog owner that he was exposing the dog groomer to a dog with a violent disposition. *Id.* at 525 (adopting the holding of *Nelson v. Hall,* 165 Cal.App.3d 709, 211 Cal.Rptr. 668 (1985)).

**15.** Black's Law Dictionary 885 (8th ed.2004).

tions that hold landlords are not "owners" under the statutes. Finally, we have a repeal of KRS 258.275 and the reenactment of KRS 258.275(1) as KRS 258.235(4) in 2004, which did not address any of the court interpretations or change any law or definition based on those interpretations. Therefore, under the reenactment doctrine, we may conclude that the General Assembly agrees with this interpretation. *Id.*

The position that the reenactment doctrine would not apply in this case because the legislature may not have been aware of *McDonald*—a case that had been in existence and followed for *35 years* at the time of reenactment—is not only ludicrous, but contrary to our longstanding rule of statutory construction that " 'it is to be assumed or presumed that the legislature was acquainted with, and had in mind, the judicial construction of former statutes on the subject.' " *Trousdale,* 181 S.W.2d at 256 (citation omitted). I would decline to overrule *McDonald* and would continue to follow longstanding precedent and hold that a landlord is not an "owner" of a tenant's dog under Kentucky's dog bite statute, KRS 258.235(4).

In addition, the Appellant argues that even if the landlords are not statutory owners, they would nevertheless be liable under common law negligence principles. A successful negligence action requires proof (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached the standard by which that duty is measured, (3) of harm to the plaintiff, and (4) of proximate causation between the defendant's conduct and the plaintiff's harm.[16] Our case law requires,

as factors in finding a duty, that the landlord have knowledge of the tenant's dog's viciousness and control over the area where the attack occurred. *McDonald,* 447 S.W.2d 84; *Ireland,* 796 S.W.2d 870.[17] In the present case there is no genuine issue of material fact that the landlords knew, or should have known, of the dangerous propensities of their tenants' dog; and, the attack took place off the landlords' property. Accordingly, the trial court's grant of summary judgment in favor of the landlords (Zinsmeisters) was proper.

I hear the victim's argument in his brief, and developed more during oral argument, that this Court should change its interpretation of "owner" to include landlords in order to facilitate a public policy that requires the landlord to obtain insurance for such injuries rather than have an innocent victim sustain the loss (where the tenant, or the one with a property interest in the dog, is not insured or able to pay a judgment). While I am sympathetic to the innocent child victim in this case, it is the role of the General Assembly to debate and decide—through legislation—the public policy issues. *See Bess v. Bracken County Fiscal Court,* 210 S.W.3d 177 (Ky. App.2006). The plurality took it upon itself to debate and decide the public policy issues, and then expanded liability, usurping the role of the legislature.

SCOTT, J., joins.

VENTERS, J., dissents by separate opinion:

I agree with the well-stated conclusions of Justice Noble's opinion that the most

---

16. DAVID J. LEIBSON, 13 KENTUCKY PRACTICE SERIES TORT LAW, § 10:2 (2011).

17. Although our case law recognizes that a landlord can be liable for injuries to persons which occur off the leased premises caused by the activities of his lessee, where the landlord consents to a use of the premises so potentially dangerous that the injury is foreseeable, *see Green v. Asher Coal Mining Co.,* 377 S.W.2d 68 (1964), this theory of liability does not apply under the facts of the case before us.

reasonable construction of these poorly drafted statutes, especially KRS 258.095(5), is that the legislature intended to impose liability upon landlords, for personal injuries inflicted by a tenant's dog while "on or about" the leased property. However, I disagree with that opinion's conclusion to confine the area "about" the property to the land "so close [to the subject property] as to be within [a person's] immediate physical reach" of the property. I believe that such a narrow band around the perimeter of a residential lot is unreasonably restrictive, and not within the commonly understood meaning of "about" in this context. The meaning of "about" when used in the context of a residential lot in a suburban residential neighborhood, is in my view, much broader. Therefore, I dissent.

The meaning of "on" the property is obvious. The dog attack in this case did not occur "on" the property owned by Appellees. More problematic is the question of whether the attack occurred "about" their property. In plain, everyday American English, when used to describe the extent of a geographic area, the word "about" means "near; close to" or "somewhere near." [18] "About," "near," "close to," are all relative concepts, the meaning of which depends upon the relative size of a specific object to which the term is connected and the purpose for which we measure the meaning of "about" the premises.

For example, as Justice Noble notes in connection with a criminal statute, a weapon is "on or about" a person if it is within the immediate reach of the person. The area circumscribed by the word "about" is relatively small (the length of an average human arm with outstretched fingers) because the object itself—the person—is small. The definition in that context also takes into account that our purpose for taking the measurement is to determine if the weapon poses a threat. Clearly, a weapon out of reach is not much of a threat. Thus, we are comfortable in that narrow scope of the area "about" the person. If we were talking about pollutants in the air "about" a person, we would surely visualize a more expansive area relevant to our concern about inhaling pollutants. In addition, when "on or about" is used with reference to something much larger than a person, for example, a football field, one typically would envision "about" the field extending well beyond the length of a man's arm. It would reasonably extend a distance of several yards outside the edge of the playing field, encompassing the area in which the cheerleaders perform and into the bleachers. Were we to hear that a dog ran "on or about" the football field, we would think of a far wider area than a mere arm's length around the boundary lines of the playing field. When the specific object is even larger—say, the whole college campus— our notion of the area "about the campus" might reasonably extend for several city blocks around the campus proper.

In the context of the typical residential neighborhood with average-sized lots, limiting the area "about" a residential lot to the length of a person's arm is inconsistent with the everyday language involved. A dog running out into the street in front of his master's yard or across to the other side of the street, is "about" the property. Neighborhood dogs, once outside the boundary fence of their master's yard,

---

18. *Random House Webster's College Dictionary* 4 (1st ed.1995) provides the following applicable meaning of "about" 1. concerning; on the subject of; in regard to: ... 2. connected or associated with: ... 3. near; close to: *about my height; about six o' clock.* 4. in or somewhere near: *He is about the house.* 5. on every side of; around. 6. on or near (one's person): [ ].

rarely stay within an arm's length thereof especially when there are cars or children to chase. With modest homes on typical suburban lots, as appears to be the case here, the area "about" the subject property reasonably extends 25–30 feet beyond the boundaries of the lot into the street and the surrounding properties.

Because the trial court granted summary judgment on the theory that the landlord had no liability at all when the injury inflicted by the dog did not occur *on* the leased premises, we have no findings of the trial court that pinpoints the location of the dog relative to the property line when it first threatened eight-year old Brandon Benningfield and his older sister. We do know that the children walked down the street in front of the subject property and the rottweiler came after them. Despite his sister's warning to stand still, Brandon ran in fear but the dog chased him and inflicted severe injuries that required substantial hospitalization. The record does not disclose how far he ran *away* from the subject property before the dog caught him. Accordingly, absent resolution of this issue of fact, summary judgment is clearly premature. *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985) (Summary judgment is premature and should not be granted where the facts and evidence do not establish existence of genuine issue of material fact, but neither do they establish nonexistence of such an issue.)

I believe we err by limiting the statute's reach to the area within arm's length of the property line, and that we err by concluding as a matter of law that the attack occurred beyond the perimeter that area covered by the statute. Therefore, I would reverse the summary judgment granted by the trial court and remand the matter for resolution of the unresolved factual issue—by trial if the relevant factual allegations are inconsistent. In addi-

tion, consistent with my view that what constitutes "about" is relative to the given circumstances, I further believe that the jury instructions should be phrased to require the jury to determine if the injury occurred "on or about" Appellees's property. In so doing, we would avoid the artificially-created zone of liability equal in length to a person's arm, and allow the jury to apply its collective common sense and the plain, ordinary meaning of the word "about," as noted above. The jury could reasonably take into account the environs of the attack, the dimensions of the property, the surrounding terrain, and other pertinent circumstances shown by the evidence to reach a fair verdict.

For the reason stated above, I dissent.

MINTON, C.J., joins.

MINTON, C.J., dissenting:

I join Justice Venters' dissenting opinion but would also hold that a landlord whose tenant's dog injures a third party can be held liable under general negligence principles even when the injury occurs off the leased property. Because Benningfield did not raise a genuine issue of material fact as to the Zinsmeisters' duty under negligence law, summary judgment on this issue was appropriate.

VENTERS, J., joins.