RENDERED: APRIL 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0818-MR

SEAN JONES, A MINOR, THROUGH
HIS COURT-APPOINTED GUARDIAN,
SARAH JONES                                                           APPELLANT

|          | APPEAL FROM CHRISTIAN CIRCUIT COURT |
|----------|-------------------------------------|
| v.       | HONORABLE ANDREW SELF, JUDGE        |
|          | ACTION NO. 19-CI-00154              |

NATIONWIDE GENERAL INSURANCE
COMPANY; PATRICK GILBERT; DARRION
LOW; JANE DOE NO. 1 "MIA"; AND UNKNOWN
DEFENDANTS NOS. 1 THROUGH 4                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE: Sean Jones, a minor, through his court-appointed guardian, Sarah

Jones (Jones) appeals from an order of the Christian Circuit Court in which it

found that Appellee Nationwide General Insurance Company (Nationwide)'s

homeowner's policy exclusion applied to bar Jones from recovery for a dog bite he sustained on property owned by its insured, Patrick Gilbert (Gilbert).

## FACTUAL BACKGROUND

Gilbert owned property located in Oak Grove, Kentucky. He lived there with his romantic partner, Darrion Low (Low), Mia Kristina, and her four children. The property was insured by Nationwide under a homeowner's policy which contained the following exclusion:

> 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to **bodily injury** or **property damage**:
>
> …
>
>> o) caused by any of the following animals owned by or in the care, custody, or control of an **insured**:
>>
>> (1) the following types of pure bred dogs or a mix breed including one of these types:
>>
>>> (a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;
>>>
>>> (b) Doberman Pinschers;
>>>
>>> (c) Rottweilers;
>>>
>>> (d) Chow Chows; or
>>>
>>> (e) Presa Canarios;

(2) wolf hybrids;

(3) dogs that have been trained to attack persons, property or other animals; or dogs that have been trained to guard persons or property;

(4) any dog with a prior history of:

(a) causing **bodily injury** to a person; or

(b) attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

This exclusion 1.o) does not apply to a dog specially trained to assist the handicapped which is owned by or in the care, custody or control of an **insured**.

Jones came to the home to play with Mia Kristina's children. When the door was opened, a pit bull named Jack raced out and bit him, causing severe lacerations. Upon receipt of Jones's claim, Nationwide dispatched an investigator to interview those connected to the dog bite incident. Thereafter, Nationwide filed an action for a declaratory judgment that the above-cited exclusion applied to preclude coverage.

## PROCEDURAL BACKGROUND

Following the completion of discovery, the parties filed their Joint Stipulations and Agreed Order Establishing Briefing Schedule. In it they stipulated that the "only remaining issue" is the applicability of the policy

-3-

exclusion based on whether or not the dog was "'owned by or in the care, custody or control' of Patrick Gilbert." They specifically waived a trial by jury and agreed to submit the issue to the court on briefs. They agreed that "the Court has authority to make determinations of fact and assess the credibility of witnesses and documentary evidence in ruling on the briefs." They also indicated that they would "submit to the Court a Joint Certification of Record containing all evidence of record to be considered upon submission of the parties' briefs."

That joint certification of record specified that the following evidence was before the court:

1. Nationwide General Insurance Company Policy No. 63 16 HO 710390 issued to Patrick Gilbert;

2. Christian County Animal Shelter records regarding the subject dog;

3. Skyline Animal Hospital records regarding the subject dog;

4. Christian County Sheriff's Office records relating to September 15, 2018, incident at issue;

5. Christian County Sheriff's Office records relating to May 16, 2018, dog bite incident involving subject dog;

6. Transcripts and audio recording of pre-litigation recorded statements of Defendants Patrick Gilbert and Darrion Low;

7. Affidavit of Defendant Patrick Gilbert;

8. Photographs from Patrick Gilbert's Facebook account;

9. Transcript of deposition of Patrick Gilbert, with exhibits;

10. Transcript of deposition of Darrion Low, with exhibits;

11. Transcript of deposition of Irene Grace, with exhibits;

12. Transcript of deposition of Sergeant Adam Vanderkolk, with exhibits;

13. Correspondence from Attorney Haggard to Patrick Gilbert dated July 3, 2019; and

14. Deed to real property located at 100 North Cavalcade Court, Oak Grove, Kentucky.

However, the deposition transcripts referenced in the joint stipulation of the record were not filed until July 15, 2021, following the entry of the trial court's order as well as its order denying Jones's motion to alter, amend or vacate.

On appeal, Jones argues that the trial court's finding as to whether the dog was owned by Gilbert or in his "care, custody, or control" was incorrect, not based on substantial evidence, and/or was based on insufficient evidence and was, therefore, an abuse of discretion. Jones asserts that because the trial court had only those portions of the depositions cited by the parties in their briefs rather than the depositions in their entirety, it did not have sufficient evidence upon which to base its decision.

**APPELLATE REVIEW**

As stated in *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003), a trial court's findings may only be set aside where they are clearly erroneous. Such findings are clearly erroneous where they are not supported by substantial

-5-

evidence. This is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." *Id.* (internal quotation marks and citations omitted). However, the Court also recognized that "[r]egardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Id.* (internal quotation marks and citations omitted).

In *Goetz v. Asset Acceptance, LLC*, 513 S.W.3d 342, 344-45 (Ky. App. 2016), this Court recognized, "It is 'the rule in this jurisdiction that the judgment of a lower court can be affirmed for any reason in the record.' *Fischer v. Fischer*, 348 S.W.3d 582, 591 (Ky. 2011). And, '[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.' *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014)[.]" This Court must conclude that not only was the evidence relied upon by the trial court sufficient it was substantial.

The evidence herein was disputed. As noted by the trial court, the testimony given by Gilbert and Low to Nationwide's investigator differed

-6-

markedly from that given after the filing of the declaratory judgment action. Low told the investigator that although he alone signed the adoption papers, they both decided to adopt the dog. Gilbert told him that "we" adopted him, that "we" took him to get him fixed, and that "we" renamed him. However, even in the subsequent deposition testimony, there is support for the trial court's finding that Gilbert owned or had care, custody, or control of the dog.

Both Gilbert and Low acknowledged that Gilbert had the ultimate authority over what people and animals lived in his house. Gilbert helped to care for the dog by letting him out and feeding him. Gilbert was identified as Low's "spouse" on the dog's records. His phone number was listed on the Skyline Animal Clinic records as the contact person for the dog.

Sergeant Vanderkolk's police report indicated that both Gilbert and Low were owners of the dog. Both were listed as individuals involved in the dog bite incident. During his deposition, Vanderkolk testified that both Gilbert and Low owned the dog, but only Gilbert took responsibility for the incident. He stated that Gilbert transported the dog to the Christian County Animal Shelter in his own vehicle. Thereafter, he stated that the dog was released to Gilbert, who paid the fee.

## DISCUSSION

**I.    Was Gilbert an "owner" for purposes of the policy exclusion?**

KRS[1] 258.095(5), the strict liability statute applicable to vicious dogs, defines a dog "owner" as:

(a) Every person having a right of property in the dog; and

(b) Every person who:

    1.  Keeps or harbors the dog;

    2.  Has the dog in his or her care;

    3.  Permits the dog to remain on or about premises owned and occupied by him or her; or

    4.  Permits the dog to remain on or about premises leased and occupied by him or her.

In the case of *Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d 561 (Ky. 2012), the Court also extended that definition to include a "landlord." The Court held that extending the statutory definition of "owner" "furthers the policy of the statute to expand liability so that dog-bite victims can be compensated, which in turn gives incentives to potential owners of dogs to alter their behavior." *Id*. at 566. Such alterations in behavior might include "barring dogs from the property" and "purchasing adequate insurance, which could be used to pay for injuries after the fact." *Id*.

---

[1] Kentucky Revised Statutes.

-8-

Here as in *May v. Holzknecht*, 320 S.W.3d 123, 127 (Ky. App. 2010), the trial court considered such factors as whether May "fed, watered, and otherwise cared for the dog[,]" as well as whether, as a homeowner, "he could have assured that the dog be kept outside or even removed from the premises."

In *Fryman for Fryman v. Pilot Life Insurance Company*, 704 S.W.2d 205, 206 (Ky. 1986), the Court held that the words used in Pilot's policy "never acquired a technical meaning in law and must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." However, in this case, there is, in fact, a "technical meaning" as set forth in the statute and cases interpreting it. Thus, the trial court could easily have found that Gilbert was an owner for purposes of the exclusion. However, that was not the sole basis for its finding that the exclusion applied.

II.    **Was the dog in Gilbert's "care, custody, or control" for purposes of the policy exclusion?**

The trial court herein also held that "it doesn't matter whether Patrick was Jack's owner with regard to the application of the exclusion in the Nationwide policy because Jack was clearly in the care, custody, or control of Patrick at all relevant times."

While there are few Kentucky cases which define "care, custody, or control," they are all discussed in *West American Insurance Company v. Prewitt*,

401 F.Supp.2d 781 (E.D. Ky. 2005). In that case, the issue presented was whether a sailboat being piloted by Prewitt was in his care, custody, or control for purposes of an exclusion in his homeowner's policy. The Court noted that under federal case law since the boat was under Prewitt's "supervision" and he had "responsibility for the safety and well-being of the boat," it was under his "care, custody or control." *Id*. at 786.

The Court then went on to consider Kentucky case law as set forth in *Kemper National Insurance Company v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002); *Ronalco, Inc. v. Home Insurance Company*, 606 S.W.2d 160 (Ky. 1980), and *United States Fidelity & Guaranty Company v. Wells*, 380 S.W.2d 75 (Ky. 1964). Although the case before it involved a homeowner's policy and not a commercial general liability policy, the Court relied upon the *Kemper* case, which "specifically held that 'care, custody, or control' exclusions are unambiguous." *Prewitt*, 401 F.Supp.2d at 788 (quoting *Kemper*, 82 S.W.3d at 873). The *Kemper* Court concluded, "The Care, Custody or Control Exclusion denies coverage for personal property, irrespective of ownership, if it is in the insured's care, custody or control." 82 S.W.3d at 876. As the exclusion herein is similarly unambiguous, Jones's arguments regarding Gilbert's reasonable expectations and the principle of *contra proferentem* are inapplicable.

This Court can find no error and we affirm the order of the Christian Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kenneth R. Haggard
Hopkinsville, Kentucky

BRIEF FOR APPELLEE
NATIONWIDE GENERAL
INSURANCE COMPANY:

Tad T. Pardue
Ian A. Loos
Bowling Green, Kentucky